**Robert PROCUP, Plaintiff-Appellant,**

**v.**

**C. STRICKLAND, et al.,
Defendants-Appellees.**

No. 83–3430.

United States Court of Appeals,
Eleventh Circuit.

July 2, 1986.

Lamar B. Winegeart, III, Arnold, Stratford & Booth, Jacksonville, Fla., for plaintiff-appellant.

Dean C. Kowalchyk, Asst. Atty. Gen., Tallahassee, Fla., for defendants-appellees.

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HATCHETT, ANDERSON and CLARK, Circuit Judges,* and TUTTLE **, Senior Circuit Judge.

## CORRECTED

PER CURIAM:

We took this case *en banc* to consider the propriety of an injunction restricting Robert Procup, a Florida prisoner, from filing any case with the district court unless submitted by an attorney admitted to practice before the court. *Procup v. Strickland,* 567 F.Supp. 146 (M.D.Fla. 1983), *rev'd,* 760 F.2d 1107 (11th Cir.1985), *vacated,* 760 F.2d 1116 (11th Cir.1985). The proceedings that brought the issue before this Court are set forth fully in those opinions.[1] We hold that the district court's injunction was overbroad, but that the district court has authority to impose serious restrictions on Procup's bringing matters before the court without an attorney.

Procup, who is serving a life sentence for murder in the first degree, has engaged in ridiculously extensive litigation in the District Court for the Middle District of Florida, fully set out in the district court's opinion. 567 F.Supp. at 148–51. As of June 1983, Procup had filed 176 cases in the Jacksonville Division of the Middle District of Florida alone, not counting suits filed in other federal and state courts. Most of Procup's suits have been *pro se, in forma pauperis* civil rights actions under 42 U.S.C.A. § 1983. None has reached the stage of trial on the merits; most have been frivolous. Procup often has filed repeated claims and failed to comply with court rules and procedures. His pleadings are long and rambling. He has ignored repeated warnings and admonitions from the district court.

There is no question that Procup's activities call for some curtailment. The district court injunction against his filing any complaint with the court without the aid of an attorney is an attempt to reduce the number of frivolous lawsuits without foreclosing truly meritorious claims. The injunction was based on the premise that if Procup had an arguably meritorious claim, he would be able to obtain an attorney to handle it for him. The district court noted that because "virtually every action" filed by Procup had been brought pursuant to 42 U.S.C.A. § 1983, the provision for an attorney's fees award in 42 U.S.C.A. § 1988 would provide "ample incentive for members of the increasingly large private bar to handle a claim which appears to be meritorious." 567 F.Supp. at 160. The district court also noted the availability of legal assistance to indigent inmates from Florida Institutional Legal Services, Inc. From these, the district court concluded:

---

* Honorable J.L. Edmondson did not participate in the consideration or disposition of this appeal.

** Honorable Elbert P. Tuttle, Senior Circuit Judge, has elected to participate in the consideration and disposition of this cause. 28 U.S.C.A. § 46(c).

1. Contrary to Judge Tjoflat's dissent, the Court construes the district court order as an injunction, effective unless vacated or modified, appealable under 28 U.S.C.A. § 1292(a)(1). Although not named in the injunction, Procup, a party to the suit in which it has been entered, is clearly affected thereby and might possibly be reached by contempt if he sought to file pleadings in violation thereof. *Cf.* 43A C.J.S. *Injunctions* § 296 (1978); *Waffenschmidt v. MacKay,* 763 F.2d 711 (5th Cir.1985), *cert. denied,* ——

U.S. ——, 106 S.Ct. 794, 88 L.Ed.2d 771 (1986); *United States v. Hall,* 472 F.2d 261 (5th Cir. 1972). Procup, therefore, has standing to seek review of that injunction. *In re Oliver,* 682 F.2d 443, 445 (3d Cir.1982) (entertaining an appeal from an almost identical order pursuant to 28 U.S.C.A. § 1292). Injunctions are construed broadly to carry out the intent of the court, which in this case clearly was to prevent Procup from filing further complaints without an attorney. The district court stated in its first sentence that it had entered an "Order to Show Cause, permitting plaintiff thirty days in which to demonstrate why the Court should not enter an injunction prohibiting him from filing any further pleadings in the courts of this district." 567 F.Supp. at 146–47.

[T]he attorney's duties under Rule 11, Fed.R.Civ.P. and the Code of Ethics—to file suit only where there are good grounds to support the pleading—will serve as an invaluable preliminary screening mechanism which will shield the Court from Procup's well-documented proclivity to barrage the Court with frivolous and ill-conceived lawsuits.

... Additionally, the Court will be ensured that ·claims brought before it on behalf of Procup have been conscientiously scrutinized before being filed. This has obviously not occurred in the past.

*Id.* at 161 (footnote omitted).

In this Court's judgment, however, the requirement that Procup file suits only through an attorney may well foreclose him from filing any suits at all. A private attorney, knowing Procup's track record, might well be unwilling to devote the time and effort necessary to sift through Procup's generally frivolous claims to see if there is one of sufficient merit to undertake legal representation. A legitimate claim could well go undiscovered. Moreover, due to Procup's shotgun litigation techniques, attorneys in the legal services office already have found themselves as defendants in Procup's rambling pleadings. This not only would deter an attorney from representing such a difficult client, but also raises the possibility that, due to intra-office conflicts of interest, the legal services attorneys would be unavailable to represent Procup. With the premise that Procup would simply be unable to get any attorney to represent him, the injunction then effectively enjoins Procup from filing any suit. The district court neither intended this result nor indicated in any way that such an absolute injunction would be appropriate. An absolute bar against a prisoner filing any suit in federal court would be patently unconstitutional. We, therefore, vacate the injunction and remand for consideration of such modification as will, as much as possible, achieve the desired purposes without encroaching on Procup's constitutional right to court access.

This does not mean that the district court was incorrect in employing injunctive relief. The district court was fully justified and within its authority in entering injunctive restrictions against Procup. Such action is necessary and prudent to protect the rights of all litigants in the federal system.

Recent years have witnessed an explosion of prisoner litigation in the federal courts. From 218 civil rights petitions of prisoners to federal courts in 1966, there were 18,034 such suits in 1984. Annual Report of the Director of the Administrative Office of the United States Courts for the Twelve Month Period Ended June 30, 1984, at 142–43. According to a 1979 study, 80% to 95% of prisoner filings are brought *in forma pauperis*. Turner, *When Prisoners Sue: A Study of Prisoner Section 1983 Suits in the Federal Courts*, 92 Harv.L.Rev. 610, 617 (1979).

The prisoner litigant may possess several distinct advantages over the ordinary litigant: time to draft multiple and prolonged pleadings; ability to proceed *in forma pauperis* and thus escape any financial obstacles confronting the usual litigant; and availability of free materials which the state must provide the prisoner, including paper and postage. As a result, there is virtually no cost to a prisoner's filing repeated, frivolous lawsuits.

In order to more adequately handle this upsurge of cases, the federal courts have adopted various administrative procedures designed to streamline the process. Some of these procedures are found in the *in forma pauperis* statute itself, 28 U.S.C.A. § 1915. Others have been adopted from recommendations contained in the so-called Aldisert Report. *See* Federal Judicial Center, *Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts* (1980). Many courts have developed sophisticated procedures involving the court, staff attorneys, magistrates, law clerks, and judges to try to sort out from the mass of frivolous suits, the meritorious ones.

Occasionally a particularly abusive prisoner, taking advantage of his unique situa-

tion, will come along with a flood of claims designed to either harass those in positions of authority or to grind the wheels of the judicial system to a halt. No matter how efficient a court's administrative procedures may be, when one litigant files upwards of a lawsuit a day, the claims of other litigants necessarily suffer. Every lawsuit filed, no matter how frivolous or repetitious, requires the investment of court time, whether the complaint is reviewed initially by a law clerk, a staff attorney, a magistrate, or the judge.

In devising methods to attain the objective of curtailing the activity of such a prisoner, however, courts must carefully observe the fine line between legitimate restraints and an impermissible restriction on a prisoner's constitutional right of access to the courts. Various courts have employed and approved a variety of injunctive devices.

As to prisoners who bring frequent or repetitious claims, courts have:

—enjoined prisoner litigants from relitigating specific claims or claims arising from the same set of factual circumstances;[2]

—required litigants to accompany all future pleadings with affidavits certifying that the claims being raised are novel, subject to contempt for false swearing;[3]

—directed the litigant to attach to future complaints a list of all cases previously filed involving the same, similar, or related cause of action, and to send an extra copy of each pleading filed to the law clerk of the chief judge of the district;[4]

—directed the litigant to seek leave of court before filing pleadings in any new or pending lawsuit;[5]

—permitted abusive prisoner litigants to file *in forma pauperis* only claims alleging actual or threatened physical harm; and requiring payment of a filing fee to bring other claims;[6]

**2.** *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir.1980) (per curiam); *In re Green*, 598 F.2d 1126, 1128 (8th Cir.1979) (*en banc*); *Hill v. Estelle*, 423 F.Supp. 690 (S.D.Tex.), *aff'd*, 543 F.2d 754 (5th Cir.1976); *Ex parte Tyler*, 70 F.R.D. 456 (E.D.Mo.1976); *see also Salahuddin v. Coughlin*, 591 F.Supp. 353 (S.D.N.Y.1984) (declining to impose injunction).

**3.** *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C.Cir.1985) (per curiam) (nonprisoner); *Green v. Warden*, 699 F.2d 364 (7th Cir.), *cert. denied*, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983) (prisoner); *In re Green*, 669 F.2d 779, 787 (D.C.Cir.1981) (per curiam) (prisoner); *Demos v. Kincheloe*, 563 F.Supp. 30 (E.D.Wash. 1982) (prisoner).

**4.** *Green v. White*, 616 F.2d 1054, 1056 (8th Cir. 1980) (per curiam).

**5.** *Abdullah v. Gatto*, 773 F.2d 487 (2d Cir.1985) (per curiam); *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C.Cir.1985) (per curiam); *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir.1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986); *Green v. Warden*, 699 F.2d 364 (7th Cir.), *cert. denied*, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983); *In re Oliver*, 682 F.2d 443 (3d Cir.1982); *In re Green*, 669 F.2d 779 (D.C.Cir.1981) (per curiam); *Pavilonis*

*v. King*, 626 F.2d 1075 (1st Cir.), *cert. denied*, 449 U.S. 829, 101 S.Ct. 96, 66 L.Ed.2d 34 (1980); *Gordon v. United States Department of Justice*, 558 F.2d 618 (1st Cir.1977) (per curiam); *Brown v. Gibson*, 571 F.Supp. 1075 (W.D.Mo.1983); *Richcreek v. Grecu*, 612 F.Supp. 111 (S.D.Ind. 1985); *Hanson v. Goodwin*, 432 F.Supp. 853 (W.D.Wash.), *appeal dismissed*, 566 F.2d 1181 (9th Cir.1977); *Rudnicki v. McCormack*, 210 F.Supp. 905 (D.R.I.1962), *appeal dismissed*, 372 U.S. 226, 83 S.Ct. 679, 9 L.Ed.2d 714 (1963).

A number of other courts, while not imposing injunctions in the particular case, have recognized the courts' power to enter this sort of injunction. *Sires v. Gabriel*, 748 F.2d 49 (1st Cir.1984); *Carter v. United States*, 733 F.2d 735 (10th Cir.1984) (per curiam), *cert. denied*, —— U.S. ——, 105 S.Ct. 915, 83 L.Ed.2d 928 (1985); *Howard v. King*, 707 F.2d 215 (5th Cir.1983) (per curiam); *Kondrat v. Byron*, 587 F.Supp. 994 (N.D.Ohio 1984).

**6.** *In re Green*, No. 81–1186 (5th Cir. Unit A Apr. 27, 1981) (appendix to *Green v. Carlson*, 649 F.2d 285, 286 (5th Cir. Unit A), *cert. denied*, 454 U.S. 1087, 102 S.Ct. 646, 70 L.Ed.2d 623 (1981)); *Peck v. Hoff*, 660 F.2d 371 (8th Cir.1981) (per curiam); *Green v. White*, 616 F.2d 1054 (8th Cir.1980) (per curiam).

Several courts have held that a total ban on all IFP filings by a particular litigant as a sanc-

—limited the number of filings by a particular inmate; and [7]

—entered injunctions prohibiting the abusive prisoner from acting as a writ writer or jailhouse lawyer for other inmates.[8]

We do not here intend to indicate how this Court would treat any of the above injunctions in a particular case, but cite them as examples of how other courts have handled the problem. Other restrictions which might be considered by a court attempting to deal with the problems created by a litigant such as Procup include:

—limitation of the number of pages to a complaint and other pleadings;

—requiring a plaintiff to file an affidavit setting forth what attempts he has made to obtain an attorney to represent him;

—limitation of further pleadings without order of court, after the complaint has been filed.

This list is intended to be neither exhaustive nor limiting. As new ideas develop and old devices prove ineffective, the judiciary must respond with imaginative new techniques designed to protect the court access of all litigants. *See Taylor v. Gibson*, 529 F.2d 709, 717 (5th Cir.1976). We make no suggestion as to the combination of restrictions that might be appropriate and do not pass on the constitutionality of any such limitation for a given case. Neither do we suggest the precise form of an injunction. Some procedures, for instance, are directed to the officers of the court rather than the litigants themselves.[9]

 There should be little doubt that the district court has the jurisdiction to protect itself against the abuses that litigants like Procup visit upon it. Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions. *In re Martin-Trigona*, 737 F.2d 1254, 1261–62 (2d Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986).[10] The fact that Procup's complaint

tion for abuse is impermissible. *Abdullah v. Gatto*, 773 F.2d 487 (2d Cir.1985) (per curiam); *Franklin v. Murphy*, 745 F.2d 1221 (9th Cir. 1984); *Carter v. United States*, 733 F.2d 735 (10th Cir.1984) (per curiam), *cert. denied,* —— U.S. ——, 105 S.Ct. 915, 83 L.Ed.2d 928 (1985); *In re Green*, 669 F.2d 779, 786 (D.C.Cir.1981) (per curiam).

7. *See Franklin v. Oregon*, 563 F.Supp. 1310 (D.Or.1983) (limiting the prisoner to six IFP filings per year). The Ninth Circuit approved the injunction, but with a qualification: "If a request is made for the filing of additional cases beyond the number prescribed by the court, Franklin must be afforded an opportunity to make a showing that the limitation to six filings is prejudicial because inclusion of these claims by amendment of his existing claims is not possible. If such a showing is made, the district court must amend its order. This will avoid the constitutionally questionable conclusive presumption that all of Franklin's subsequent submissions are frivolous or malicious." *Franklin v. Murphy*, 745 F.2d 1221, 1232 (9th Cir.1984). In addition, for any filings beyond the initial six, Franklin would be required to seek leave of court, certifying that the claims he wished to present were new claims never before raised and disposed of on the merits by a federal court. Upon failure to certify or false certification, Franklin would be subject to contempt proceed-

ings. *Id.* (quoting *In re Green*, 669 F.2d 779, 787 (D.C.Cir.1981) (per curiam)).

8. *Hanson v. Goodwin*, 432 F.Supp. 853 (W.D. Wash.), *appeal dismissed,* 566 F.2d 1181 (9th Cir.1977); *Green v. Wyrick*, 428 F.Supp. 732 (W.D.Mo.1976), *aff'd sub nom. In re Green*, 586 F.2d 1247, 1251 (8th Cir.1978), *cert. denied,* 440 U.S. 922, 99 S.Ct. 1249, 59 L.Ed.2d 475 (1979).

9. This Court, in a previous case, has instructed its clerk not to file pleadings that do not strictly comply with applicable rules of procedure. *Carter v. Pettigrew*, No. 84–8411 (11th Cir. Aug. 24, 1984) (unpublished order) (order authorizing clerk of court to inspect documents received from certain litigants for compliance with Fed. R.App.P. 3 and to refuse to file documents if the judgment or order appealed from is not specified). Another court has ordered a United States Magistrate to screen all future filings to determine whether the filing was in furtherance of a bad faith effort to deluge the courts. *Green v. Camper*, 477 F.Supp. 758 (W.D.Mo.1979).

10. *See also In re Green*, No. 81–1186 (5th Cir. Unit A Apr. 27, 1981) (appendix to *Green v. Carlson*, 649 F.2d 285, 287 (5th Cir. Unit A), *cert. denied,* 454 U.S. 1087, 102 S.Ct. 646, 70 L.Ed.2d 623 (1981)) (court's general supervisory power to control its docket); *Harrelson v. United*

in this case may have failed to state a justiciable federal claim is of no impact on the court's power to enter injunctive relief against such a recalcitrant litigant. The court has a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others. Were a frivolous lawsuit a bar to the court's inherent jurisdiction, the court would be powerless to act upon even a flood of frivolous lawsuits which threatened to bring judicial business to a standstill.

We do not here design the kind of injuction that would be appropriate in this case. Considerable discretion necessarily is reposed in the district court. Procup can be severely restricted as to what he may file and how he must behave in his applications for judicial relief. He just cannot be completely foreclosed from *any* access to the court. The injunction is vacated and the case is remanded for the district court to consider an appropriate substitute order.

VACATED and REMANDED.

CLARK, Circuit Judge, concurring:

I concur with the majority opinion with one reservation. The opinion on pages 1072 and 1073 lists limitations and preconditions upon a person's right of access to the court. Certain ones have been advanced by other courts and others are suggested anew by the opinion. By listing these limitations, the majority impliedly authorizes their use so long as they are not applied in a manner to deny access to the courts.

I construe the underlined portion of the following limitation as an unconstitutional denial of access and the right to proceed *in forma pauperis* pursuant to 28 U.S.C.A. § 1915(d):

> permitt[ing] abusive prisoner litigants to file *in forma pauperis* only claims alleg-

States, 613 F.2d 114, 116 (5th Cir.1980) (per curiam) (All Writs Act, 28 U.S.C.A. § 1651(a)).

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. In *Watson,* the court discussed the procedure to be followed under the *in forma*

ing actual or threatened physical harm; *and requiring payment of a filing fee to bring other claims;*

In every other respect I agree with the majority opinion.

TJOFLAT, Circuit Judge, dissenting:

The majority's opinion recites a compelling tale of the problems abusive litigants, including Procup, can pose for the federal courts. An even more compelling version can be found in the district court's opinion. In its eagerness to sanction a means to curb these abuses, however, the majority neglects the time-honored principle that a court of appeals is constrained to decide only appealable decisions of the district court. The majority's opinion fails to discuss how this case arose, what actions were taken in the district court, and how the case came to this court on appeal. In fact, the majority's opinion scarcely acknowledges that the order in question arose in the context of an actual lawsuit. A proper consideration of the procedural history of this case in the district court makes it apparent that this court lacks jurisdiction to entertain this appeal.

Procup, a Florida prisoner serving a life sentence, initiated this litigation by filing a 42 U.S.C. § 1983 (1982) action against various prison officials, complaining of his treatment in prison. Attached to the complaint was an affidavit asserting that Procup lacked sufficient funds to prepay the fees associated with commencing an action in the district court. The affidavit was sufficient on its face as to economic eligibility to allow Procup to proceed *in forma pauperis,* pursuant to 28 U.S.C. § 1915(a) (1982), and the complaint was accordingly placed on the docket. *See Watson v. Ault,* 525 F.2d 886, 891 (5th Cir.1976).[1]

*pauperis* statute, 28 U.S.C. § 1915 (1982). If an affidavit filed with a complaint demonstrates economic eligibility, the requirements of section 1915(a) are satisfied and the district court must docket the case. The court may then proceed to the inquiry dictated by section 1915(d) and dismiss the case if the allegation of poverty is untrue or if the action is frivolous or malicious.

The district court, noting the volume and nature of Procup's previous litigation, issued an order to show cause why an injunction should not issue prohibiting Procup from filing any further pleadings in the district court. The Florida attorney general's office was sent a copy of the show cause order and given the opportunity to present its position to the court. Following the receipt of responses from both parties, the district court issued an opinion finding that Procup had engaged in extensive and abusive litigation in an attempt to disrupt the functioning of the federal courts and that sanctions were warranted. The district court concluded that the sanction necessary to curb Procup's abuses was an order "enjoining" the clerk of the court from filing any additional cases, or pleadings in those additional cases, submitted by Procup unless such additional cases or pleadings were submitted on behalf of Procup by an attorney.[2] The district court rejected Procup's motions to reconsider its order and his attempts to have the "injunction" dissolved and granted Procup leave to appeal *in forma pauperis.*

The district court has made no finding that *this* case brought by Procup is frivolous or malicious. As far as the record indicates, Procup's section 1983 suit is still pending before the district court. The

court's order to the clerk pertains to "additional cases or pleadings therein" and apparently does not preclude Procup from litigating his current action.[3] In fact, contrary to any finding of frivolousness, Procup has, in effect, obtained leave to proceed *in forma pauperis,* pursuant to 28 U.S.C. § 1915(a) (1982), and the district court has not undertaken to dismiss the case as frivolous under 28 U.S.C. § 1915(d) (1982). *See supra* note 1.

It is therefore beyond dispute that the district court has not rendered a final decision appealable pursuant to 28 U.S.C. § 1291 (1982). The district court's order is interlocutory in nature and could only be appealed if it constituted an order granting an injunction within 28 U.S.C. § 1292(a)(1) (1982).[4] It is therefore necessary to look beyond what the district court's order was called and carefully consider its true nature.

The first thing to note, which is apparent on the face of the order, is that the court did not enjoin *Procup's* activities in any way. The order was directed to the clerk of the court, "enjoining" the clerk from filing non-complying pleadings. A careful reading of the court's order discloses that it does not attempt to constrain Procup's conduct in any fashion. In fact, the order contemplates that Procup probably will file

---

**2.** The full text of the order is as follows:

PERMANENT INJUNCTION

In accordance with the Opinion entered herein on this date, it is

ADJUDGED that the Clerk of Court for the United States District Court for the Middle District of Florida is hereby permanently enjoined from filing any additional cases or pleadings therein submitted by or on behalf of Robert Procup, unless such additional cases or pleadings therein are submitted on behalf of Procup by a duly licensed attorney admitted to practice before this Court.

DONE AND ORDERED at Jacksonville, Florida, this 17 day of June, 1983.

**3.** Although this point was at one time disputed by the parties, both parties now appear to concede that the order does not apply to pending cases. The language of the order is consistent with this conclusion. *Cf. Procup v. Strickland,* 760 F.2d 1107, 1110 n. 3 (11th Cir.1985) (panel inclined to construe order as inapplicable to pending cases).

**4.** The court's order does not have the attributes of the limited class of collateral orders appealable under the doctrine of *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), where immediate review of separate and independent matters is necessary to secure important interests. To the extent the district court's order is currently preventing Procup from filing any new lawsuit that he has the right to pursue, there is an available mechanism whereby Procup can contest the validity of the district court's order. If and when the clerk of the district court, pursuant to the order in question, refuses to file a future case or pleading, Procup could seek a writ of mandamus from the district court ordering the clerk to accept and file such papers. If the district court refuses to issue the writ and Procup appeals, the validity of the district court's order would be squarely before this court.

additional cases or pleadings without a licensed attorney's participation. Because the district court expected such a situation to arise, it directed the clerk of the court to refuse to accept such filings. Contrary to the suggestion in the majority opinion, *ante* p. 1070, n. 1, Procup would not be in contempt of the court's order if he filed additional pleadings not signed by an attorney because the court's order does not prohibit such filings; it merely instructs the clerk of the court to refuse them.[5] Nor can it be said that, although not directed at Procup, the order had the effect of preventing him from litigating this case. The district court did not issue the order to enable it to adjudicate the case before it. On the contrary, the order was inapplicable to pending cases. It is also clear that the court did not grant injunctive relief against Procup at the behest of beleaguered litigants harassed by Procup's litigation tactics. In sum, the district court's order was not tantamount to the granting of an injunction in this case[6] and is not appealable as an interlocutory order under 28 U.S.C. § 1292(a)(1) (1982).

Although the order in question bears some resemblance to a sanction imposed pursuant to Fed.R.Civ.P. 11, it could not be characterized as such. Rule 11, which grants the district courts wide latitude to sanction a litigant or attorney who submits a baseless pleading, motion, or paper, could not be invoked in a case such as this where there has been no finding that the complaint in question failed to comply with the rule's requirements. In this case's current posture, we must assume that Procup's pleading satisfies the standard imposed by Rule 11 and is not abusive.[7]

The district court's order, despite being entitled a permanent injunction, is in effect an administrative order, directed to the clerk of the court, governing the way the court will handle its business in the future as to one particular litigant. Although entered in the context of this case, the order bears no relation to it. There is no right to take an appeal from such an order where it has no effect on the current case. As pointed out previously, the district court has not prevented Procup from litigating *this* case to a conclusion.

A situation precisely on point arose in *Pavilonis v. King*, 626 F.2d 1075 (1st Cir.), *cert. denied*, 449 U.S. 829, 101 S.Ct. 96, 66 L.Ed.2d 34 (1980). Pavilonis brought two civil rights suits against various officials connected with the Boston schools. The district court issued an order enjoining Pavilonis from filing new lawsuits without leave of court and directed the clerk to refuse to accept non-complying papers. No action was taken with regard to the pending complaints. The district court refused to vacate its order and Pavilonis appealed. The First Circuit Court of Appeals dis-

**5.** *Waffenschmidt v. MacKay,* 763 F.2d 711 (5th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 794, 88 L.Ed.2d 771 (1986), and *United States v. Hall,* 472 F.2d 261 (5th Cir.1972), are not to the contrary. In those cases, the district court's injunctive order had been violated and the issue was whether a nonparty who violated an injunction or aided and abetted in its violation could be held in contempt. In both cases, a clear violation of the injunctive order had occurred. In contrast, should Procup, without a licensed attorney, tender a new pleading to the clerk for filing, Procup would have done nothing prohibited by the court's order.

**6.** The majority's opinion points out, *ante* p. 1070, n. 1, that the district court's show cause order asked Procup to demonstrate why the court should not enjoin *his* conduct. After hearing from the parties and giving the matter its consideration, the court decided against issuing an injunction addressed to Procup, instead entering an order directed to the clerk of the court. It is of no moment that the court may have, at one time, considered enjoining Procup, for it failed to do so.

**7.** If the district court had found the present complaint frivolous, noted a history of abusive litigation, imposed a Rule 11 sanction, and dismissed the complaint, we would have an appealable order. The dismissal of the complaint would, of course, be subject to appellate review. In addition, we could review the sanction imposed and determine if the district court was within its authority to impose such a sanction and whether the imposition of the sanction was an appropriate exercise of the court's discretion. Even in that situation, the *application* of the sanction in some future case might raise problems that could only be appropriately reviewed when that actual controversy arose.

missed the appeal because final judgments had not been entered in the lawsuits. *Pavilonis v. King,* 626 F.2d at 1077 n. 4. Sometime thereafter, the district court dismissed Pavilonis' complaints and an appeal ensued. At that point, with final judgments rendered, the court of appeals was able to review the district court's dismissal of the suits and the appropriateness of the sanction it imposed. Our circuit, employing established legal principles, should reach the same result reached by the First Circuit. Procup's appeal should be dismissed, and appellate review must await final disposition by the district court.[8]

Accordingly, I must respectfully dissent from the court's judgment.

FAY, Circuit Judge, dissenting:

While agreeing with most of what is stated in the majority opinion, I respectfully dissent from the vacating of the injunctive order issued by the district court. The district court reviewed in great detail the history of some of the suits filed by Procup with an analysis of an illustrative sampling. 567 F.Supp. 146, 148–155. After carefully weighing the importance of access to the courts, the district court placed restrictions upon future filings. I would affirm these restrictions for the reasons stated in the district court's most thoughtful opinion.

No one person has the right to deliberately attempt to destroy the operations of the courts of our country. Few of the most fundamental constitutional rights are absolute. Procup has "thumbed his nose" at every authority within his contact. He is literally playing games with the system.

Such conduct should not and must not be tolerated!

KRAVITCH, Circuit Judge, dissenting:

Were this case properly before us, I would join Judge Johnson's opinion. I agree with Judge Johnson that the majority's opinion endorses disturbingly arbitrary guidelines for limiting access to the federal courts. I concur in Judge Tjoflat's procedural analysis, however, that the case is not properly before us at this time; accordingly, I join in his dissent. If, in the future, the clerk of the Middle District of Florida, pursuant to that court's injunction, should refuse to file another Procup *pro se* petition, Procup then could challenge the injunction by petitioning for a writ of mandamus pursuant to Federal Rules of Appellate Procedure 21(a). At such time, the case properly would be before this court for determination on the merits.

JOHNSON, Circuit Judge, dissenting, in which TUTTLE, Senior Circuit Judge, joins:

Though initially in agreement with the majority's result, upon further reflection I am unable to join it, for I find that the majority does precisely what it protests so loudly that it does not: it sets up decisional criteria that, taken together, have the effect of completely foreclosing the access of prisoners to the federal courtroom. The most obvious precedent for the majority's approach is, I fear, Byron's Julia who— even while "whispering 'I will ne'er consent'—consented."[1]

All prisoners are guaranteed access to federal courts, *Bounds v. Smith,* 430 U.S.

---

**8.** Were I to reach the merits of this case, I would agree that the district court's order must be vacated. As an initial matter, the district court proceeded quite irregularly by issuing such an order without first assessing the complaint in this case. Second, the order's application to even the most meritorious future filing presents obvious problems. Finally, the order violates the long-established principle that a court exercising its equitable powers or its inherent powers should do so in a measured fashion, narrowly tailoring the relief to accomplish its intended goal, and proceeding to more dras-

tic means only if necessary. Having concluded that this order must be vacated, the majority opinion goes further and, in dicta, engages in substantial speculation as to what type of sanctions might be agreeable. The inclusion of a laundry list of possible sanctions that may or may not present constitutional or other problems in particular situations is both ill-advised and wholly unnecessary to the resolution of this case.

**1.** Byron, *Don Juan,* canto I, st. 117 (1818).

817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977); *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972), and though that right is neither unconditional nor absolute, the Supreme Court has clearly forbidden the inferior federal courts from interposing restrictions that deprive a prisoner of "adequate, effective, and meaningful" access. *Bounds*, 430 U.S. at 822, 97 S.Ct. at 1495; *Wolff v. McDonnell*, 418 U.S. 539, 579–80, 94 S.Ct. 2963, 2986–87, 41 L.Ed.2d 935 (1974); *Mitchum v. Purvis*, 650 F.2d 647, 648 (5th Cir.Unit B 1981). There can be no question that Robert Procup has abused the federal judicial system by filing scores of frivolous claims. Majority Opinion *ante*, at 1070. Nor can there be any suggestion that Procup is alone in his discovery of this *modus operandi* or that it does not pose serious problems for the courts. *See, e.g., Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980) (*per curiam*) (non-criminal); *Castro v. United States*, 775 F.2d 399, 410 (1st Cir.1985) (*per curiam*) (non-criminal); *Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir.1985) (*per curiam*) (criminal); *Franklin v. Murphy*, 745 F.2d 1221, 1231–32 (9th Cir.1984) (criminal); In re *Green*, 669 F.2d 779, 786 (D.C.Cir.1981) (*per curiam*) (criminal).

I have no quarrel with the notion that trial courts may restrict, though not interdict, court access by prisoners who abuse the adjudicatory process. Nor am I unmindful of the need to minimize the burden created by frivolous lawsuits of any ilk. But in our haste to respond to the "explosion of prisoner litigation in the federal courts," Majority Opinion *ante*, at 1071, we must keep paramount in our minds a concern for "the fine line between legitimate restraints and an impermissible restriction on a prisoner's constitutional right of access to the courts." *Id. ante*, at 1072. In responding to this sensitive problem courts must be especially careful to craft remedies "narrowly drawn to fit the specific vice encountered." *Castro*, 775 F.2d at 410; *Abdullah*, 773 F.2d at 488; *Wood v. Santa Barbara Chamber of Commerce*, 705 F.2d 1515, 1525 (9th Cir.1983), *cert.*

*denied*, 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984). I write in dissent to emphasize that the Court's opinion is based upon and approves illegal restrictions on prisoner access to the courts. It sanctions access restrictions that standing alone might or might not be unobjectionable but which "taken together [are] so burdensome as to deny the litigant meaningful access to the courts." *Green*, 669 F.2d at 786; *Abdullah*, 773 F.2d at 488.

First, the majority endorses limiting abusive prisoner litigants to filing "only [*in forma pauperis*] claims alleging actual or threatened physical harm; and requiring payment of a filing fee to bring other claims," Majority Opinion *ante*, at 1072, and limiting "the number of filings by a particular inmate" in a given time period to a given number, *id.*

The common thread that has guided all courts of appeals in reviewing restrictions on court access has been the firm conviction that the relevant statute places upon the *courts* the ultimate responsibility for determining which claims are frivolous and which are not. *See, e.g., Johnson v. Kemp*, 781 F.2d 1570 (11th Cir.1986) (*per curiam*); *Phillips v. Mashburn*, 746 F.2d 782 (11th Cir.1984) (*per curiam*); *Urban v. United Nations*, 768 F.2d 1497 (D.C.Cir.1985) (*per curiam*); *Sires v. Gabriel*, 748 F.2d 49 (1st Cir.1984) (*per curiam*); In re *Martin-Trigona*, 737 F.2d 1254 (2d Cir.1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986); *Carter v. United States*, 733 F.2d 735 (10th Cir.1984) (*per curiam*), *cert. denied*, —— U.S. ——, 105 S.Ct. 915, 83 L.Ed.2d 928 (1985). When Congress wrote 28 U.S.C.A. § 1915(a) (1985), providing for *in forma pauperis* suits and vesting in the trial courts limited latitude to dismiss such cases if "frivolous or malicious," *id.* at § 1915(d), it penned a prescription for individualized, case-by-case determination of the merit or frivolity of *each filing. Green*, 669 F.2d at 786; *Carter*, 733 F.2d at 737. On appeal we will not normally prescribe the particular *method* by which a trial court will undertake this determination, but we are nonetheless

bound to compel the trial court to exercise *some* particularized review. *Steffler v. United States,* 319 U.S. 38, 41, 63 S.Ct. 948, 949, 87 L.Ed. 1197 (1943) (*per curiam*). To countenance any review less probing is inconsistent with the dictates of the statute. *Green,* 669 F.2d at 786.

This Court has recognized that the decision to dismiss as frivolous is entrusted to the "broad discretion" of the trial court. *Pace v. Evans,* 709 F.2d 1428, 1429 (11th Cir.1983) (*per curiam*). My quarrel with the majority is with the assumption that, under the rubric of "discretion," we can permit trial courts to issue a blanket ruling that certain types or more than a certain number of filings are, *ipso facto,* frivolous. "Discretion" connotes more than a mere arithmetic counting of filings as determinative of the likely merits of any subsequent claim. "Instead, one must analyze the nature of plaintiff's litigation in light of the scope of the Section 1915 privilege and additionally pinpoint specific abuses to which appropriate responsive remedies can be tied." *Carter v. Telectron, Inc.,* 452 F.Supp. 944, 990 (S.D.Tex.1977). The trial court may not, we have clearly held, "act arbitrarily and it may not deny the application on erroneous grounds." *Pace,* 709 F.2d at 1429; *Johnson,* 781 F.2d at 1572 (reversing trial court for setting restrictions on frivolous prisoner filings "on the basis of litigation history without regard to the particular circumstances thereof and their relevance to the [restriction imposed]."); *Flowers v. Turbine Support Division,* 507 F.2d 1242, 1244 (5th Cir.1975). I have difficulty conjuring a more obvious recipe for arbitrary or erroneous decision-making than the issuance of a *per se* limit on the filing of claims of abuse either to an arbitrarily selected number (say six, as the majority suggests) or unless the abuse is physical in nature.

The majority's approach will erect a complete bar preventing some prisoners from presenting valid, actionable claims of constitutional magnitude [2] simply because the delict is something other than physical abuse or follows on the heels of a randomly selected "magic number" of previous filings that year. To that extent, the majority's approach violates the Fifth and Fourteenth Amendments to the United States Constitution.[3] *Franklin v. Murphy,* 745 F.2d 1221, 1232, (9th Cir.1984); *Green,* 669 F.2d at 786. The effect of the majority's limitation is to rewrite the statutory provisions Congress provided. The majority also sanctions the trial court's abdication of its obligation to determine if it should take the awesome step of interdicting the access of a citizen to the courts of justice. It creates an irrebuttable presumption that, at least for some, no claim of non-physical abuse is worthy of even cursory consideration.

Second, I find troubling the majority's willingness to restrict *in forma pauperis* actions to those alleging claims of physical harm while permitting other such actions to go forward only upon "payment of a filing fee." Majority Opinion *ante,* at 1072. Proceeding *in forma pauperis* is a privilege and not a right. 28 U.S.C.A. § 1915(d). Nevertheless, when a prisoner presents a meritorious allegation of constitutional deprivation in the form of an *in forma pauperis* civil action, and he has no other reasonable avenue to secure relief, he simply may not be required to pay a filing

---

**2.** Admittedly the Supreme Court has narrowed the scope of constitutionally-based claims of deprivation that prisoners may bring, *see e.g., Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), *Daniels v. Williams,* — U.S. —, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). But there is nothing in any of the Court's recent statements to suggest that valid claims of deprivation need not be heard simply because a prisoner has in the past abused the judicial process.

**3.** The majority acknowledges at its footnote 6 that a complete ban on all *in forma pauperis* filings by a litigant is impermissible. But it apparently holds that by leaving the courthouse door slightly ajar—so that a limited number of claims, or claims of a particular type, can slip inside—it has made adequate provision for the constitutional right of court access. Clearly the Fifth and Fourteenth Amendments require more.

fee. *Boddie v. Connecticut,* 401 U.S. 371, 380–82, 91 S.Ct. 780, 787–88, 28 L.Ed.2d 113 (1971);[4] *Davis v. Page,* 618 F.2d 374, 383 n. 9 (5th Cir.1980), *cert. denied sub nom. Davis v. Gladstone,* 464 U.S. 1052, 104 S.Ct. 735, 79 L.Ed.2d 194 (1984). I see no principled basis for pretermitting *Boddie's* holding merely because the valid claim comes to the court amid a sea of frivolous suits.

I object to the fee requirement for a second reason: it has the effect of erecting a hierarchy of value preferences within the Fifth and Fourteenth Amendments. Henceforth, the Court determines, for a discrete class of litigants non-physical abuse is either a due process violation of a lesser order or, more accurately, no longer an actionable deprivation at all. I had always thought that the Constitution protected citizens against due process and equal protection violations be they in the form of physical or emotional abuse, derogation of civil rights, denial of legal process, or any other of the congeries of rights subsumed under the banner of the Fifth and Fourteenth Amendments.

Third, the majority suggests that trial courts may require "a plaintiff to file an affidavit setting forth what attempts he has made to obtain an attorney to represent him." Majority Opinion *ante,* at 1073. The purpose of this restriction is puzzling. The Court evidently assumes that the tide of frivolous suits may be stemmed by requiring a prisoner to secure counsel, in the expectation that doing so will introduce an element of restraint. Presumably this re-

straint results from fear of sanctions available under Fed.R.Civ.P. 11.

The Court's reliance on this restriction is misplaced for two reasons. To the extent that the majority uses Rule 11 sanctions as a means to minimize frivolous filings there is little advantage to be gained by the requirement of counsel. Rule 11 sanctions are equally available for use against lawyers and *pro se* litigants. But more importantly, the clear implication of the Court's requirement is that *if* a prisoner can obtain counsel he *must* obtain counsel. This is squarely at odds with the right to self-representation protected by the Sixth Amendment, *Faretta v. California,* 422 U.S. 806, 832–34, 95 S.Ct. 2525, 2539–41, 45 L.Ed.2d 562 (1975), and by statute, 28 U.S.C.A. § 1654 (1985).

Fourth, the majority proposes that trial courts may elect to impose "limitation of further pleadings without order of court, after the complaint has been filed." Majority Opinion *ante,* at 1073. My objection here is two-fold. By placing limitations on subsequent "pleadings," rather than on subsequent "causes of action," the majority permits a prisoner to start an action but makes it extraordinarily difficult for him to resolve it expeditiously. Each time an *in forma pauperis* prisoner seeks to file a reply brief, to tender a motion for summary judgment or to respond to one, to compel discovery—in short to engage in the usual motion practice—he must wait upon the trial court for a specific grant of leave to file. If our objective is to minimize the diversion of court resources to frivolous

---

**4.** Indeed, the Court in *Boddie* neatly anticipated and rejected the majority's rationale for using fees to weed out frivolous claims:

The arguments for [imposing fees and costs in bringing a civil action for divorce] are that the State's interest in the prevention of frivolous litigation is substantial, its use of court fees and process costs to allocate scarce resources is rational, and its balance between the defendant's right to notice and the plaintiff's right to access is reasonable.

In our opinion, none of these considerations is sufficient to override the interest of these plaintiff-appellants in having access to the only avenue open for [securing the relief sought]. Not only is there no necessary con-

nection between a litigant's assets and the seriousness of his motives in bringing suit, but it is here beyond present dispute that appellants bring these actions in good faith. Moreover, other alternatives exist to fees and costs requirements as a means for conserving the time of courts and protecting parties from frivolous litigation....

*Boddie,* 401 U.S. at 381–82, 91 S.Ct. at 788.

Of course, the majority can find no refuge in the *bona fide* nature of the claims in *Boddie,* for it here declines to provide prisoners with the opportunity to demonstrate that their claims are in good faith brought. Rather, the majority simply assumes that they are not.

cases, this seems an odd way to effect that goal.

If the majority's opinion is interpreted to limit a prisoner's filing of subsequent causes of action, this argument fails for the reasons I advanced in considering the Court's proposed limitation on filings to a given number or type of injury. The simple fact that one delict has already occurred is in no way indicative of the likely merits of subsequent claims. Such a limitation, I believe, impermissibly deprives the prisoner of "adequate, effective, and meaningful" access to the courts. *Bounds*, 430 U.S. at 822, 97 S.Ct. at 1495; *Mitchum v. Purvis*, 650 F.2d at 648.

Finally, I take exception to the majority's opinion in a fifth respect. The Court suggests that one means of curbing frivolous litigation is by entering injunctions against so-called "jailhouse lawyers" who help prisoners generate dozens of meritless complaints. The Supreme Court has determined that prisoners have, at least in limited circumstances, a protected interest in access to an inmate writ writer. *Johnson v. Avery*, 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969). It is clear that states retain power to impose certain limitations on the activities of such persons, or even to forbid them from plying their craft. *Id.* But we are not properly called upon today to consider or decide the scope of that power. Procup is his own publicist. He relies on his own wits to generate his pleadings. Accordingly, that portion of the majority's holding is *obiter dictum.*

The majority's opinion represents a response to what it perceives as a serious threat to the integrity of the adjudicatory process. We must always be careful as judges not to sound the alarm too hastily. We must be even more careful not to become swept up in our own rhetoric and on that account to attack problems with blunt, poorly chosen tools that inflict damage of a constitutional sort far worse than the blight we set out to excise. The majority today does just that. It makes available a plethora of access restrictions that are ill-advised and ill-suited to the task at hand. I am unable to join in its opinion. Therefore, with deference, I dissent.