PER CURIAM.
 

 The petitioner, Anthony R. Thompson, filed this petition for a writ of mandamus requesting that we direct Judge Steven E. Haddock to set aside his December 30, 2008, order. Thompson asserts that on December 4, 2008, his mother hand-delivered a postconviction petition and the $213 filing fee to the Morgan County circuit clerk. On December 30, 2008, Judge Haddock ordered that the filing fee be returned to Thompson and that Thompson pay all outstanding fees that had been assessed from previous postconviction petitions before the court would accept a new postconviction petition challenging his 1985 conviction for escape. Thompson then
 
 *121
 
 filed this petition for a writ of mandamus with this Court.
 

 Judge Haddock’s December 30, 2008, order states:
 

 “This cause is before the Court on [Thompson’s] petition for relief from conviction or sentence pursuant to Ala. R.Crim. P. 32. This is the fifth post-conviction petition [Thompson] has filed challenging his conviction and sentence.[
 
 1
 
 ] By order entered July 11, 2008, the Court directed the Circuit Court Clerk neither to accept, nor take any action on post-conviction petitions tendered by the [Thompson] unless and until the following conditions are satisfied: (1) [Thompson] has paid in full all of the court costs taxed against him to date in case numbers CC-82-591, CC-84-152, and CC-88-374; (2) [Thompson] prepays the civil docketing fee at the time of filing any new Rule 32[, Ala. R.Crim. P.,] petition; and (3) the petition raises a cognizable jurisdictional claim.
 

 “[Thompson] has failed to comply with the Court’s July 11th order by paying in full all of the court costs taxed against him to date in case numbers CC-82-591, CC-84-152, and CC-88-374. [Thompson] shall have sixty (60) days from the date of this order within which to pay these costs in full. If [Thompson] fails to comply with this order, the Court will direct the Clerk to close the file in this matter and no further action will be taken.
 

 “As to the docketing fee remitted to the Clerk in conjunction with the filing of [Thompson’s] most recent petition, the Clerk shall refund this fee to the payor.”
 

 In this petition, Thompson argues that Judge Haddock’s order denies him access to the courts and violates the United States Supreme Court’s holding in
 
 Bounds v. Smith,
 
 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The State asserts that Thompson has failed to establish the requirements for the issuance of a writ of mandamus because, it says, he has failed to show that he has standing to raise an access-to-court claim. Specifically, the State asserts that Thompson has failed to show any “actual injury.” It relies on the United States Supreme Court’s opinion in
 
 Lewis v. Casey,
 
 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).
 

 The United States Supreme Court in
 
 Bounds v. Smith
 
 recognized that prisoners have a constitutional right to access to the courts. The Court stated:
 

 “We hold, therefore, that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.”
 

 430 U.S. at 828, 97 S.Ct. 1491. More recently, in
 
 Lewis v. Casey,
 
 the Supreme Court narrowed its decision in
 
 Bounds v. Smith,
 
 and held that to prove a denial of an access-to-court claim a defendant must show “actual injury.” In explaining its reasoning, the Court stated:
 

 “The requirement that an inmate alleging a violation of
 
 Bounds
 
 must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches. See
 
 Allen v. Wright,
 
 468 U.S. 737, 750-752, 104 S.Ct. 3315,
 
 *122
 
 3324-3325, 82 L.Ed.2d 556 (1984);
 
 Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,
 
 454 U.S. 464, 471-476, 102 S.Ct. 752, 757-761, 70 L.Ed.2d 700 (1982). It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.”
 

 518 U.S. at 349, 116 S.Ct. 2174.
 

 In conclusion, the Court cautioned:
 

 “[BJounds
 
 does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.”
 

 518 U.S. at 355, 116 S.Ct. 2174.
 

 In
 
 Christopher v. Harbury,
 
 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court discussed the two categories of access-to-court claims and the actual injury that must be shown for each category. The Court stated:
 

 “This Court’s prior cases on denial of access to courts have not extended over the entire range of claims that have been brought under that general rubric elsewhere, but if we consider examples in the Courts of Appeals as well as our own, two categories emerge. In the first are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time. Thus, in the prison-litigation cases, the relief sought may be a law library for a prisoner’s use in preparing a case,
 
 Bounds v. Smith,
 
 430 U.S. 817, 828 (1977);
 
 Lewis v. Casey,
 
 518 U.S. 343, 346-348 (1996), or a reader for an illiterate prisoner,
 
 id.,
 
 at 347-348, or simply a lawyer,
 
 ibid.
 
 In denial-of-access cases challenging filing fees that poor plaintiffs cannot afford to pay, the object is an order requiring waiver of a fee to open the courthouse door for desired litigation, such as direct appeals or federal habeas petitions in criminal cases, or civil suits asserting family-law rights, e.g.,
 
 Boddie v. Connecticut,
 
 401 U.S. 371, 372 (1971) (divorce filing fee);
 
 M.L.B. v. S.L.J.,
 
 519 U.S. 102, 106-107 (1996) (record fee in parental-rights termination action). In cases of this sort, the essence of the access claim is that official action is presently denying an opportunity to litigate for a class of ptential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed.
 

 “The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future. The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case, e.g.,
 
 Foster v. Lake Jackson,
 
 28 F.3d 425, 429 (C.A.5 1994);
 
 Bell v. Milwaukee,
 
 746 F.2d 1205, 1261 (C.A.7 1984) (‘[T]he cover-up and resistance of the investigating police officers rendered hollow [the plaintiffs] right to seek re
 
 *123
 
 dress’), the loss of an opportunity to sue, e.g.,
 
 Swekel v. River Rouge,
 
 119 F.3d 1259, 1261 (C.A.6 1997) (police coverup extended throughout ‘time to file suit ... under ... statute of limitations’), or the loss of an opportunity to seek some particular order of relief, as Harbury alleges here. These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future.
 

 “While the circumstances thus vary, the ultimate justification for recognizing each kind of claim is the same. Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong. However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. We indicated as much in our most recent case on denial of access,
 
 Lewis v. Casey,
 
 supra, where we noted that even in forward-looking prisoner class actions to remove roadblocks to future litigation, the named plaintiff must identify a ‘nonfrivolous,’ ‘arguable’ underlying claim,
 
 id.,
 
 at 353, and n. 3 and we have been given no reason to treat backward-looking access claims any differently in this respect.
 
 It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.
 
 It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.”
 

 536 U.S. at 412-14, 122 S.Ct. 2179 (emphasis added).
 

 Thus, to satisfy the requirements of
 
 Christopher,
 
 Thompson must assert the “nonfrivolous” claim or claims he sought to raise in his latest postconviction petition. Thompson was convicted of escape in 1985, and the period for filing a timely Rule 32, Ala. R.Crim. P., petition has long since expired.
 
 [2]
 
 The only claims Thompson may now raise in a postconviction petition are claims asserting newly discovered evidence or jurisdictional claims. See Rule 32.1, Ala. R.Crim. P., and Rule 32.2(c), Ala. R.Crim. P. In his original mandamus petition, Thompson failed to identify any claim he now wishes to raise in his latest Rule 32 petition. However, Thompson filed an amended mandamus petition
 
 [3]
 
 and asserted the following:
 

 
 *124
 
 “On December 4, 2008, Thompson filed his Rule 32 petition in the circuit court of Morgan County Alabama, collaterally attacking his 1985 conviction for escape third degree. In the petition Thompson argued that the circuit court was without jurisdiction to render judgment or to impose sentence because Thompson was never in ‘custody1 as required by Sections 13A-10-30(d) and 13A-10-33(a) Ala.Code 1975. Specifically, the underlying municipal court misdemeanor charges in which Thompson’s alleged third degree escape conviction arises, were disposed of by the municipal judge imposing fines. Thompson was never ordered to serve jail time[;] therefore, Thompson could not be convicted of escape where there was no ‘custody’ for him to escape from.”
 

 Thompson does not assert that his arrest on the underlying misdemeanor charge, which appeared to form the basis for the escape charge, was illegal. Instead, Thompson argues that he could not be convicted of escape in the third degree because he was not in jail as a result of his misdemeanor conviction nor was he sentenced to a term of imprisonment. However, we have characterized escape in the third degree as a “catchall” statute. Section 13A-10-33(a), Ala.Code 1975, states: “A person commits the offense of escape in the third degree if he escapes or attempts to escape from custody.” “Custody” is defined in § 13A. — 10—30(b)(1) as “[a] restraint or detention by a public servant pursuant to a lawful arrest, conviction or order of the court.” In
 
 Long v. State,
 
 675 So.2d 532 (Ala.Crim.App.1996), we stated:
 

 “ ‘Section 13A-10-33, by definition is a “catchall” statute for escapes. It is applicable to all escapes, including those from city or county jails or from city or county jail officials.... It applies to escapes from “any detention pursuant to a lawful arrest or court order.” See, Ala. Code §§ 13A-10-31 through 13A-10-33 Commentary (1975).’ ”
 

 Long v. State,
 
 675 So.2d 532, 534 (Ala.Crim.App.1996), quoting
 
 Abernathy v. State,
 
 462 So.2d 960, 961 (Ala.Crim.App.1984). See also
 
 Herren v. State,
 
 969 So.2d 926 (Ala.Crim.App.2006) (sufficient evidence to prove escape in the third degree when defendant escaped from the custody of a district court bailiff);
 
 Estes v. State,
 
 690 So.2d 512 (Ala.Crim.App.1996) (upheld escape-in-the-third-degree conviction when defendant fled from a probation officer);
 
 Gibbons v. State,
 
 676 So.2d 956, (Ala.Crim.App.1995) (“The term ‘custody5 has a broader meaning when applied to the charge of
 
 third
 
 degree escape.”).
 

 Thompson’s claim has no merit and was barred by the limitations period set out in Rule 32.2(c), Ala. R.Crim. P.
 
 [4]
 
 Accordingly, Thompson failed to show that he was prevented from raising a “nonfrivolous claim”; thus, he failed to show any “actual injury.”
 

 Moreover, in
 
 Peoples v. State,
 
 531 So.2d 323 (Ala.Crim.App.1988), this Court, quoting the United States Court of Appeals for the Eleventh Circuit in
 
 Procup v. Strickland,
 
 792 F.2d 1069, 1072-73 (11th Cir.1986), cited with approval the sanctions a court may legally impose when faced with litigious and prolific pro se litigants:
 

 “Courts have an ‘inherent power ... to regulate the activities of abusive liti
 
 *125
 
 gants by imposing carefully tailored restrictions under the appropriate circumstances.’
 
 Cotner v. Hopkins,
 
 795 F.2d 900, 902 (10th Cir.1986). While those conditions may be ‘onerous,’ they ‘cannot be so burdensome, however, as to deny a litigant meaningful access to the courts.’
 
 Cotner,
 
 795 F.2d at 902.
 

 “ ‘In devising methods to attain the objective of curtailing the activity of such a prisoner, however, courts must carefully observe the fine line between legitimate restraints and an impermissible restriction on a prisoner’s constitutional right of access to the courts. Various courts have employed and approved a variety of injunctive devices.
 

 “ ‘As to prisoners who bring frequent or repetitious claims, courts have:
 

 “ *■ — enjoined prisoner litigants from relitigating specific claims or claims arising from the same set of factual circumstances;
 

 “ ‘ — required litigants to accompany all future pleadings with affidavits certifying that the claims being raised are novel, subject to contempt for false swearing;
 

 “ ‘ — directed the litigant to attach to future complaints a list of all cases previously filed involving the same, similar, or related cause of action, and to send an extra copy of each pleading filed to the law clerk of the chief judge of the district;
 

 “ ‘ — directed the litigant to seek leave of court before filing pleadings in any new or pending lawsuit;
 

 “ ‘ — permitted abusive prisoner litigants to file
 
 in forma pauperis
 
 only claims alleging actual or threatened physical harm; and requiring payment of a filing fee to bring other claims;
 

 “ ‘ — limited the number of filings by a particular inmate; and “ ‘ — entered injunctions prohibiting the abusive prisoner from acting as a writ writer or jailhouse lawyer for other inmates.
 

 “ “We do not here intend to indicate how this Court would treat any of the above injunctions in a particular case, but cite them as examples of how other courts have handled the problem. Other restrictions which might be considered by a court attempting to deal with the problems created by a litigant such as [Franklin] include:
 

 “ ‘ — limitation of the number of pages to a complaint and other pleadings; “ ‘ — requiring a plaintiff to file an affidavit setting forth what attempts he has made to obtain an attorney to represent him;
 

 “ ‘ — limitation of further pleadings without order of court, after the complaint has been filed.
 

 “ ‘This list is intended to be neither exhaustive nor limiting. As new ideas develop and old devices prove ineffective, the judiciary must respond with imaginative new techniques designed to protect the court access of all litigants.’ Pro
 
 cup v. Strickland,
 
 792 F.2d 1069, 1072-73 (11th Cir.1986).”
 

 531 So.2d at 326-27.
 

 For a writ of mandamus to issue, the petitioner must show: (1) a clear legal right to the relief sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) no other adequate remedy; and (4) the properly invoked jurisdiction of the reviewing court. See
 
 Ex parte Fowler,
 
 863 So.2d 1136 (Ala.Crim.App.2001). “A writ of mandamus is a drastic and extraordinary writ and will not be issued unless the petitioner has a clear and undisputable right to a particular result.
 
 Ex parte
 
 
 *126
 

 Sides,
 
 594 So.2d 93 (Ala.1992).”
 
 Ex parte Springer,
 
 619 So.2d 1267 (Ala.1992).
 

 Thompson has failed to show any “actual injury”; therefore, under
 
 Lewis v. Casey
 
 and
 
 Christopher v. Harbury
 
 he has no standing to raise an access-to-court claim. Also, Judge Haddock’s order is in keeping with the sanctions approved by the federal court in
 
 Procup v. Strickland,
 
 supra. Accordingly, Thompson can show no clear legal right to the issuance of a writ of mandamus, and this petition is due to be denied.
 

 PETITION DENIED.
 

 WISE, P.J., and WELCH, WINDOM, KELLUM, and MAIN, JJ., concur.
 

 [1]
 

 . The State asserts in its answer to this petition that Thompson filed seven prior Rule 32 petitions.
 

 [2]
 

 . The limitations period in Rule 32 was amended effective August 1, 2002, to shorten the period from two years to one year. However, because the triggering date in this case occurred before July 31, 2001, Thompson had two years within which to file a timely Rule 32 petition. See Rule 32.2(c), Ala. R.Crim. P.
 

 [3]
 

 . We initially dismissed Thompson’s petition as untimely filed. The case was reinstated
 
 *124
 
 after Thompson filed an application for rehearing. Accompanying the application for rehearing was an amended mandamus petition.
 

 [4]
 

 . It also appears that Thompson raised a similar claim in his second Rule 32 petition. This Court affirmed the denial of that petition by an unpublished memorandum. See
 
 Thompson v. State,
 
 837 So.2d 893 (Ala.Crim.App.2001) (table).