790 So.2d 398 (2001)
Douglas M. JACKSON, Sr., Petitioner,
v.
FLORIDA DEPARTMENT OF CORRECTIONS, Respondent.
No. SC92827.
Supreme Court of Florida.
March 15, 2001.
Rehearing Denied July 11, 2001.
Douglas M. Jackson, Sr., Starke, FL, Petitioner, pro se.
Louis A. Vargas, Florida Department of Corrections, Tallahassee, FL, and Donna *399 M. La Plante, Assistant Attorney General, Tallahassee, FL, for Respondent.

Opinion on Sanctions
PER CURIAM.
By separate order we have denied petitioner Jackson's motion for rehearing as to our decision of May 4, 2000, in this case. See Jackson v. Florida Dep't of Corrections, 790 So.2d 381 (Fla.2000). In this opinion we address the petitioner's response to the order to show cause we issued on May 4, 2000. For the reasons expressed below, we deem Jackson's response to the order to show cause inadequate and impose sanctions as set forth below.

FACTS
Jackson is a prisoner currently serving a life sentence for multiple murders committed in 1981. On April 20, 1998, Jackson filed a petition for writ of mandamus against the Florida Department of Corrections ("the Department"). After considerable proceedings, as set forth in our opinion issued May 4, 2000, this Court granted Jackson's motion to proceed in forma pauperis and examined the merits of the petition. Upon consideration of the merits, however, we concluded that Jackson's arguments were so clearly without merit that we deemed the petition to be frivolous and denied it. Because we concluded that Jackson had abused the judicial system, we ordered Jackson to show cause why he should not be sanctioned.[1]

JACKSON'S RESPONSE TO THE ORDER TO SHOW CAUSE
In his response to the order to show cause, Jackson argues that he has *400 had to file so many lawsuits against the Department because it is crime-ridden and mismanaged. He then again reminds us, as he has done in so many motions already filed in this case and his many other pending cases, that a death row inmate, Frank Valdez, was allegedly murdered by prison guards in 1999. In addition, Jackson asserts he must file so many lawsuits because the inmate grievance process does not work properly. Jackson argues that he is not the vexatious litigator he seems to be, but rather a victim of the system. Further, he asserts: since there is no law against being litigious, if this Court sanctions him, it has made law, which is a violation of the doctrine of separation of powers because only the Legislature can make law; sanctioning him would violate his right to self-representation under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), would constitute a sanction or punishment when he has done no wrong, and would restrict his ability to litigate, thus denying him access to courts; and if this Court will not accept any more pro se petitions from him, it must appoint counsel for him and for all those litigants barred from filing in the courts.

ANALYSIS
Whether Frank Valdez has or has not been murdered by guards has nothing to do with Jackson. Jackson's lawsuits have never had anything to do with physical violence or abuse; they have had to do with mundane departmental rules concerning gain time (which he is ineligible to earn since he has a life sentence), and other internal prison matters such as hours in the law library. Further, the fact that Jackson has not been successful with his grievances does not prove the Department's grievance procedure does not work. Moreover, the right to selfrepresentation described in Faretta concerned a criminal defendant's right to represent himself in a criminal action. See 422 U.S. at 813-15, 95 S.Ct. 2525. This is not a criminal action and that case has no applicability here. Even if such a right is implicated here, this Court has the inherent authority to limit that right when pro se litigation becomes so disruptive that it threatens to deny other litigants their rights. Finally, there is no absolute right to postconviction counsel. See Murray v. Giarratano, 492 U.S. 1, 9, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); Williams v. State, 472 So.2d 738 (Fla.1985). Therefore, counsel need not be appointed for Jackson.[2] Finally, regardless of whether there are any statutes making litigiousness or the filing of frivolous lawsuits illegal, this Court has inherent power to regulate and *401 sanction a litigant who disrupts its proceedings. See generally Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (concerning a court's inherent power to sanction a litigant who employs bad faith in filing frivolous pleadings despite any lack of specific statutory or rule authority); United States v. International Broth. of Teamsters, 948 F.2d 1338 (2nd Cir.1991) (same); Patsy v. Patsy, 666 So.2d 1045 (Fla. 4th DCA 1996) (same). Clearly, when a court sanctions a litigant for actions committed in its court, it is not charging or convicting the person of a violation of criminal or civil laws, it is merely enforcing its judicial authority. Therefore, there is no violation of the doctrine of separation of powers.
While we recognize that we have seldom utilized this type of sanction, seldom have we come across a petitioner as litigious and frivolous as Jackson. Not only does Jackson file excessive numbers of petitions, but in each petition he files numerous motions and supplements throughout the pendency of each case. More than once this Court has had to expedite a final ruling in one of Jackson's cases so that it could be disposed of before another of the almost daily motions or amendments arrived. It is not uncommon for this Court to have to rule on the petition and a dozen or so motionsthen, after disposition, another dozen or so motions must be ruled on before the case finally becomes final. While this case was pending, Jackson filed nearly a dozen more petitions in this Court, and even after Jackson had responded to the order to show cause and had filed his motion for rehearing, he continued to file a multitude of irrelevant motions in this case and his other pending cases. We finally had to issue an order instructing him not to file any more motions until the prior matters had been ruled upon so that the file could remain with the justices long enough for the analysis to be done.
While we are cognizant of the access to courts implications of refusing to accept any more petitions from Jackson unless they are signed by an attorney, we are also concerned that failure to impose this sanction will handicap this Court's ability to timely review the many other petitions filed by inmates and other petitioners who have not abused the system. While on the one hand, we would like to say that the courts should never limit a person's ability to access the courts, on the other hand, there are a handful of petitioners who have so abused the system that failure to restrain them could deny or delay the right of access to courts for the rest of the populace. Even the United States Supreme Court has had to face the difficult perspective of putting significant restraints on some of its pro se litigants. Several of the members of the United States Supreme Court did not agree that limits should ever be placed on a litigant;[3] however, a majority of that Court has found that in extreme circumstances, it was necessary to do so to ensure free access to the courts in general. In In re McDonald, 489 *402 U.S. 180, 184, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989), the Supreme Court stated:
A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice. The continual processing of petitioner's frivolous requests for extraordinary writs does not promote that end. Although we have not done so previously, lower courts have issued orders intended to curb serious abuses by persons proceeding in forma pauperis.

Id. Then, after reviewing the competing arguments in that case for and against sanctioning McDonald, the Court concluded that, as the lower courts were doing, it too had to begin to curb the abuses of some of its indigent litigants and did so.
Not long ago, we said in regard to another abusive litigant that he, like Jackson, had "flooded the courts with frivolous petitions, appeals and other filings requesting relief to which he was not entitled." See Rivera v. State, 728 So.2d 1165, 1166 (Fla. 1998) (quoting earlier order to show cause). We then recognized that "the resources of our court system are finite and must be reserved for the resolution of genuine disputes." Id. And as we said in our last opinion in this case:
[T]he [Supreme] Court held that the constitutional right of access to courts does not "guarantee inmates the wherewithal to transform themselves into litigating engines." Jackson's lawsuits against the Department of Corrections have become so numerous that one could describe him similarly.
Jackson v. Florida Dep't of Corrections, 790 So.2d 381, 387 (Fla.2000) (alteration in original) (quoting Lewis v. Casey, 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Therefore, we have determined that we should follow the United States Supreme Court's lead and our own precedent in this regard and sanction Jackson by instructing him that this Court will no longer accept for filing any actions he submits without representation by counsel. Any other cases which may be pending in this Court in which Jackson is proceeding pro se will be dismissed unless a notice of appearance signed by a member in good standing of The Florida Bar is filed in each case on or before May 14, 2001.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, PARIENTE and LEWIS, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion.
ANSTEAD, J., concurring in part and dissenting in part.
Although I concur for the most part in the majority's opinion and its commendable effort to curtail the petitioner's filing of frivolous lawsuits and legal actions, I would exclude access to the writ of habeas corpus from the reach of the sanctions imposed.
One need not detail the history of The Great Writ in this country and this state to recognize the importance it has played in providing meaningful access to the justice system. Suffice it to quote from Florida's Constitution and article I, section 13 of the Declaration of Rights:
SECTION 13. Habeas corpus.The writ of habeas corpus shall be grantable of right, freely and without cost. It shall be returnable without delay, and shall never be suspended unless, in case of rebellion or invasion, suspension is essential to the public safety.

(Emphasis supplied). The power to silence is awesome, and the power to silence completely and permanently is unimaginable in a free society. The petitioner's *403 transgressions are significant, but I fear not sufficient to justify complete and permanent silence.
NOTES
[1] This Court has not been specifically advised of Jackson's pleadings in other courts. However, based on an examination of this Court's records, from 1992 when this Court reversed Jackson's death sentence, see Jackson v. State, 599 So.2d 103 (Fla.1992)(No. 79,970), to just prior to filing the instant petition, he has filed or taken part in thirteen petitions in this Court. See Coleman [and Jackson] v. Florida Dep't of Corrections, 717 So.2d 529 (Fla. 1998)(No. 92,828); Jackson v. Florida Dep't of Corrections, 718 So.2d 168 (Fla.1998)(No. 92,793); Jackson v. Singletary, 717 So.2d 533 (Fla.1998)(No. 92,121); Coleman v. Florida Dep't of Corrections, 717 So.2d 529 (Fla. 1998)(No. 92,116); Jackson v. Department of Corrections, 717 So.2d 533 (Fla.1998)(No. 92,114); Jackson v. Davis, 705 So.2d 9 (Fla. 1997)(No. 91,796); Jackson v. Department of Corrections, 707 So.2d 1125 (Fla.1997)(No. 91,381); Vega [and Jackson] v. Singletary, 704 So.2d 521 (Fla.1997)(No. 90,021); Jackson v. McAndrew, 687 So.2d 1303 (Fla.1997)(No. 89,675); Jackson v. Schapiro, 680 So.2d 422 (Fla.1996)(No. 88,860); Jackson v. Singletary, 675 So.2d 927 (Fla.1996)(No. 87,961); Jackson v. Singletary, 670 So.2d 938 (Fla. 1996)(No. 87,372); Jackson v. Department of Corrections, 617 So.2d 319 (Fla.1993)(No. 81,061). Seven of those petitions were for writ of mandamus filed against the Department of Corrections or employees of the prison.

As a general rule, Jackson's petitions against the Department concern the manner in which it conducts prison affairs and how it disciplines its inmates. In each of the petitions listed above, Jackson was granted in forma pauperis status and thus was not required to pay the filing fee. Jackson paid no filing fee in his two petitions for review filed in this Court, and he paid no filing fee for the four habeas petitions filed here since there is no filing fee for such petitions.
Since the filing of the instant petition against the Department on April 20, 1998, Jackson has filed eleven additional petitions against the Department which are either still pending, were transferred, or were dismissed. See Jackson v. Department of Corrections, No. 93,227 (Fla. petition filed May 6, 1998)(pending); Jackson v. Singletary, No. 94,196 (Fla. petition filed Oct. 26, 1998)(pending); Jackson v. Department of Corrections, No. 94,195 (Fla. petition filed Oct. 26, 1998)(pending); Jackson v. Department of Corrections, No. 94,234 (Fla. petition filed Nov. 3, 1998)(pending); Jackson v. Department of Corrections, No. 94,271 (Fla. petition filed Nov. 9, 1998)(pending); Jackson v. Moore, No. 95,700 (Fla. petition filed June 1, 1999)(pending); Jackson v. Moore, No. 95,891 (Fla. Jul. 19, 1999)(transferred); Jackson v. Moore, No. 95,931 (Fla. Jul. 19, 1999)(transferred); Stridison [and Jackson] v. Moore, No. 95,992 (Fla. Jul. 23, 1999)(transferred); Jackson v. Moore, No. 96,321 (Fla. petition filed Aug. 19, 1999)(pending); Stridison [and Jackson] v. Moore, No. 96,382, 741 So.2d 1137 (Fla. Aug.31, 1999)(dismissed). In all likelihood, Jackson will have filed more petitions in this Court before this decision is published.
[2] Considering Jackson's history of filing frivolous actions, and although this case does not concern a criminal appeal, we find particularly instructive a portion of a decision from the Fourth District Court of Appeal. It stated:

Neither due process nor equal protection require an appeal or that an indigent convicted of crime shall have as of course the services of an attorney provided by the state to take a frivolous appeal, even though he may appeal as a matter of right. Such a requirement would cause congestion and retard the speedy administration of justice by the squandering of Judicial services and other evils. Mobley v. State, 215 So.2d 90, 92 (Fla. 4th DCA 1968).
[3] In the United States Supreme Court's first case prospectively barring a pro se litigant due to his abuse, Justices Brennan, Marshall, Blackmun, and Stevens dissented. Justice Brennan wrote:

In the first such act in its almost 200 year history, the Court today bars its door to a litigant prospectively. Jessie McDonald may well have abused his right to file petitions in this Court without payment of the docketing fee; the Court's order documents that fact. I do not agree, however, that he poses such a threat to the orderly administration of justice that we should embark on the unprecedented and dangerous course the Court charts today.
See In re McDonald, 489 U.S. 180, 185, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989) (Brennan, J., dissenting).