833 So.2d 756 (2002)
Anthony R. MARTIN, Petitioner,
v.
STATE of Florida, Respondent.
No. SC02-511.
Supreme Court of Florida.
December 5, 2002.
*757 Anthony R. Martin, pro se, Palm Beach, FL, for Petitioner.
No Appearance, for Respondent.

OPINION ON SANCTIONS
PER CURIAM.
Anthony R. Martin[1] filed a petition for discretionary review in this Court in the instant case. In an order issued previously in this case, we denied review concluding that "the petition presents no basis for jurisdiction." See Martin v. State, No. SC02-511, 829 So.2d 918 (Fla. July 15, 2002) (text available at 2002 Fla. LEXIS 1653). Considering that this Court previously sanctioned Martin for abusing the judicial system in Martin v. State, 747 So.2d 386 (Fla.2000), and concluding that Martin's submission of the petition for discretionary review constituted additional abuse of the judicial system, we issued an order requiring that Martin show cause why he should not be further sanctioned. Martin has now filed his response to that order and, for the reasons set forth below, we conclude that Martin has failed to show cause why he should not be sanctioned.

FACTS
In 2000, due to Martin's long history of filing procedurally barred and extremely abusive petitions, this Court issued a written decision sanctioning Martin. See Martin v. State, 747 So.2d 386 (Fla.2000).[2] The sanction imposed essentially denied Martin leave to proceed in forma pauperis for writ petitions, which were the types of pleadings that he was abusing. Out of concern that a total denial of indigency might be unduly restrictive, the Court imposed a sanction that denied Martin prospective indigency in civil writ petitions only. The sanction left unrestricted, among other things, Martin's ability to file *758 other types of actions such as legitimate petitions for writ of habeas corpus (since they require no filing fee) and petitions for discretionary review. See Martin v. State, 747 So.2d 386, 392 (Fla.2000). We also warned Martin that should he continue to abuse the processes of this Court, he would be further sanctioned. Id. at 391. Since that time, Martin has indeed continued to abuse the processes of this Court. He has submitted literally thousands of pages of documents to this Court inappropriately denominating his filings as petitions for discretionary review or as petitions for writ of habeas corpus, even though no such jurisdiction existed. Since the sanction order did not bar legitimate petitions for writ of habeas corpus or petitions for discretionary review, it has been necessary for us to carefully examine each of Martin's many pleadings to determine whether they violated the sanction order. Since each case was extremely lengthy and poorly organized, a great deal of judicial effort and resources has been wasted in reviewing his pleadings.
This Court has discretionary review jurisdiction to review several narrow classes of district court decisions. See art. V, § 3(b)(3)-(4), Fla. Const. In the last few years Martin received a number of written decisions from the district courts. Unfortunately, he delayed seeking discretionary review in this Court. Further, when he finally sought review of those decisions, he inappropriately continued filing petitions for writs of habeas or mandamus, not petitions for discretionary review.[3] However, as it does for all petitioners, the clerk's office treated the petitions as they should have been denominatedas petitions for discretionary reviewbut then dismissed them as untimely. After the clerk's office began doing this, Martin "discovered" that such petitions were not barred by the sanction order and he began filing nearly all his pleadings as petitions for discretionary review. Most were not, however, true petitions for discretionary review, and after carefully reviewing each pleading, we rejected them in accordance with the sanction order.
Nevertheless, Martin has twice succeeded in filing a timely petition for discretionary review. In the first one, Martin alleged that the district court's decision in Martin v. State, 796 So.2d 1271 (Fla. 4th DCA 2001), conflicted with numerous decisions from this Court and the district courts. This Court denied review, concluding that the petition presented no basis for the exercise of its jurisdiction. Martin v. State, 816 So.2d 127 (Fla.2002).
This is Martin's second timely petition for discretionary review. The "decision" under review in this case was a rather long, unpublished order denying five motions Martin had filed in the Fourth District Court of Appeal. After the Fourth District provided Martin no relief in its decision in the earlier case, Martin filed another appeal in that court, attempting to seek review of the same trial court order. In the latter case, the Fourth District dismissed the appeal as untimely. Martin v. State, No. 4D01-1664 (Fla. 4th DCA Oct. 30, 2001). In a routine court order, it also subsequently denied five motions filed by Martin. That routine order did not discuss the underlying subject of Martin's appeal. Nevertheless, Martin filed the instant *759 petition for discretionary review, asserting that this nearly unelaborated order conflicted with a number of decisions from both this Court and the district courts on the subject of res judicata, right to counsel, and other matters. It was immediately clear, however, that the Fourth District's order did not discuss or even mention any of those subjects and that Martin's "jurisdictional" arguments had nothing at all to do with this Court's conflict jurisdiction. He was simply rearguing the merits of his criminal case as well as contesting the Fourth District's October 17, 2001, written decision in Martin v. State, 796 So.2d 1271 (Fla. 4th DCA 2001), which was the subject of Martin's previous petition for discretionary review. In essence, Martin was attempting to seek review of the same district court decision over and over again by repeatedly appealing the same trial court order and then seeking discretionary review of each order he received from the Fourth District. We concluded that this type of repetitive behavior constituted an abuse of the discretionary review process. Thus, we denied the petition for discretionary review for lack of jurisdiction and issued Martin an order requiring that he show cause why he should not be further sanctioned such that any further pleadings submitted by him would have to be signed by an attorney in good standing with The Florida Bar.
In Martin's response to that order, he asserts that such a proposed sanction has already been determined to be improper in Procup v. Strickland, 792 F.2d 1069 (11th Cir.1986). In addition, he asserts that it is not he who has abused the system, but rather, the judicial system and this Court that have abused him. For this reason, Martin maintains, he must continue to file lawsuit after lawsuit. Finally, he concludes, since this Court has consistently refused to protect his constitutional rights, he must find a court with more respect for constitutional rights than this one. He then threatens that this Court's "outrageous behavior" will be punished by a higher court.

ANALYSIS
We reject Martin's response as completely without merit and decline to address all of his arguments except the contention that this Court cannot sanction Martin in the manner proposed based on Procup v. Strickland, 792 F.2d 1069 (11th Cir.1986).
Some sixteen years ago, in Procup, a federal appellate court concluded that a lower court's order barring all pro se proceedings from an inmate who had "engaged in ridiculously extensive litigation" was too broad because the inmate tended to sue his attorneys so it was unlikely he could find an attorney to take his cases.
We do not, however, believe that this 1986 case represents the current state of the law in this area. In 1989, the United States Supreme Court began sanctioning abusive litigants by denying them prospective indigency as a sanction for filing frivolous pleadings. See In re McDonald, 489 U.S. 180, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989). As discussed, a prospective denial of indigency status is not effective against abusive litigants in this Court due to the fact that petitions for writ of habeas corpus are free in this State. Instead, this Court has utilized the "attorney only" sanction first imposed in Attwood v. Singletary, 661 So.2d 1216 (Fla. 1995). We have only used this type of sanction with particularly abusive litigants, and Martin is, in our opinion, the "worst of the worst." This Court has used this type of sanction since 1995, and no court has found them to be improper. In fact, the year after this Court barred Attwood, the *760 United States Supreme Court also imposed sanctions on him for his frivolous filings. See, e.g., Attwood v. Singletary, 516 U.S. 297, 116 S.Ct. 769, 133 L.Ed.2d 721 (1996).[4] Thus, we conclude that neither Procup nor any of the United States Supreme Court's cases preclude this Court from imposing such a sanction.
This Court ordered Martin to show cause why he should not be sanctioned for abusing the judicial system by filing pleadings that failed to properly invoke the jurisdiction of this Court. Martin has not done so. Instead, he has responded with insults, threats of federal litigation, and continued reargument of issues which have already been determined adversely to him. Martin has already had his appeal in the district court. There is simply no right to a second appeal to Florida's highest court. Under the Florida Constitution, after the direct appeal, only litigants who receive certain types of district court decisions may seek discretionary review in this Court. See generally art. V, § 3(b), Fla. Const. Martin clearly feels that despite the fact that he had not received a decision that would provide this Court with discretionary review jurisdiction, he wants this Court to review his case anyway because his rights have allegedly been violated. Martin simply refuses to conform himself to the jurisdictional requirements necessary for him to attain this Court's jurisdiction. Instead, he endeavors to find ways to avoid this Court's attempts to discourage him from continuing to litigate the issues that have already been resolved. In short, we are convinced that any further limitations set by this Court, short of requiring an attorney, will be violated and avoided, as he has violated and avoided the previous limitations this Court imposed on him in Martin v. State, 747 So.2d 386 (Fla.2000). As we said not long ago regarding another extremely litigious petitioner:
While we are cognizant of the access to courts implications of refusing to accept any more petitions from [the petitioner] unless they are signed by an attorney, we are also concerned that failure to impose this sanction will handicap this Court's ability to timely review the many other petitions filed by inmates and other petitioners who have not abused the system. While on the one hand, we would like to say that the courts should never limit a person's ability to access the courts, on the other hand, there are a handful of petitioners who have so abused the system that failure to restrain them could deny or delay the right of access to courts for the rest of the populace. Even the United States Supreme Court has had to face the difficult perspective of putting significant restraints on some of its pro se litigants. Several of the members of the United States Supreme Court did not agree that limits should ever be placed on a litigant; however, a majority of that Court has found [in In re McDonald, 489 U.S. 180, 184, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989),] that in extreme circumstances, it was necessary to do so to ensure free access to the courts in general.
Jackson v. Florida Dep't of Corrections, 790 So.2d at 401 (footnote omitted).
We have recognized before that "the resources of our court system are finite and must be reserved for the resolution of genuine disputes." Armstead v. State, 817 So.2d 841, 843 (Fla.2002) (quoting Rivera v. State, 728 So.2d 1165, 1166 (Fla.1998)). *761 Thus, in order to preserve the right of access for all litigants, we hereby instruct the Clerk of this Court to accept no pleading for filing from Martin unless that pleading is submitted and signed by an attorney who represents Martin and who is a member in good standing of The Florida Bar.
It is so ordered.
ANSTEAD, C.J., SHAW, WELLS, LEWIS, and QUINCE, JJ., and HARDING, Senior Justice, concur.
PARIENTE, J., recused.
NOTES
[1] Martin is also known as or was previously known as Anthony R. Martin-Trigona.
[2] Martin has filed literally thousands of lawsuits across the nation and is particularly malicious in his abuse. A Lexis search reveals 135 cases across the nation mentioning him by name. See, e.g., In re Martin-Trigona, 573 F.Supp. 1245 (D.Conn.1983) (commenting upon the extent to which Martin had succeeded in multiplying lawsuits around the country), rev'd in part on other grounds, 737 F.2d 1254 (2d Cir.1984); In re New Haven Grand Jury, 604 F.Supp. 453, 455 n. 1 (D.Conn.1985) ("There is a mass of litigation, largely pernicious, in this Circuit and elsewhere associated with the name of Anthony R. Martin-Trigona...."). There are seven law review articles on abusive litigants in which Martin is mentioned by name.
[3] Martin graduated from law school in Illinois but was denied admission by the Illinois Supreme Court due to his abusive behavior. See In re Martin-Trigona, 55 Ill.2d 301, 302 N.E.2d 68 (1973) (noting that Martin lacked the qualities of responsibility, candor, fairness, self-restraint, objectivity, and respect for the judicial system as well as having a propensity to unreasonably react against anyone he believed opposed him), cert. denied, 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974).
[4] In this published opinion, the United States Supreme Court denied Attwood's request to proceed in forma pauperis in that case and prospectively as a sanction for filing frivolous petitions.