842 So.2d 793 (2003)
Austin V. TASSE, Petitioner,
v.
G.W. SIMPSON, et al., Respondents.
No. SC02-1527.
Supreme Court of Florida.
March 20, 2003.
*794 Austin V. Tasse, pro se, Fort Lauderdale, FL, for Petitioner.
G.W. Simpson, III, pro se, New Smyrna Beach, FL, for Respondent.
PER CURIAM.
On June 24, 2002, petitioner Austin V. Tasse submitted a petition for writ of mandamus.[1] The petition contained scandalous and obscene language. Tasse insulted specific attorneys and judges, The Florida Bar, the Judicial Qualifications Commission, and the legal system as a whole. While this Court will not reprint the entire petition, printed below is a sample taken from an attachment to Tasse's petition:
[The] Nazi judge gave [petitioner] his LAW 101 bullsh*t cliche "fool for a client" ad nauseam to perpetuate the DIRTY ATTY GAME. [Petitioner] told him [he did] not need atty, since [he] had defeated 30 scumbags [and had] studied law in San Quentin Prison in 69 when framed by LA and BURBANK PIGS.... [Petitioner] vowed NO NAZI JUDGE, D.A., COP, ATTY, NOBODY WOULD EVER WALK ON [him] AGAIN. Then [petitioner] met the dirty motherf***er 4 judges of [location omitted], A HICK AREA OF HILLBILLIES.... [Petitioner] sent out thousands of letters on this dishonorable motherf***er Nazi, so [the trial judge] recused [himself] and appointed [name omitted] who set non-jury trial.... [Then that judge recused himself and] then a 3rd NAZI JUDGE [name omitted] set a 3rd trial date aug. 8, 01. [Petitioner] told this stupid motherf***er he could not hold a MOCK TRIAL, case over.... [Petitioner] told this dishonorable prick who had bought his license for law at Walgreens that [he] would never enter his FASCIST COURT.... [The judge] held the farce MOCK TRIAL ... This IMBECILE JUDGE, WHOSE AGE AND I.Q. TOGETHER WOULDN'T TOTAL 100.... [is like a]ll courts [which] are corrupt, see case so and so, as they quote from some irrelevant bullsh*t.... Only LOSER attys become judges, could not make the BILLABLE HOURS.... They kiss the a** of the party, get on ballot, the public does not know 1 a**hole atty from the another. Voted in, they kiss the a** of the Gov for promotions.... [T]he DCA and ALL HIGH COURTS RUBBER STAMP DENIED as in [petitioner's] cases. The *795 DCA denied appeals with IRREFUTABLY PROVEN PEJURY [sic].... The FLORIDA BAR, set up to con the public they police their own, gave [the defendant's attorney] his license to lie, would do nothing. Judicial Qualifications, set up by has been judges to con the public they police their own, would do nothing on the NAZIS. State Atty General [name omitted] did nothing on [petitioner's] criminal complaint.... Federal Judge [name omitted] .... a simple minded prick said "I CANNOT WADE THROUGH 50 PAGES OF WRIT".... [T]his lazy prick did not do his job [and the] female attys on [their] period could not do job.... [Then petitioner] filed a case in [location omitted], Nazi judge [name omitted], THE LOUSE, DENIED case saying "frivolous, SCANDALOUS".... Yes it was a scandal as it was in L.A. where I brought down 15 pigs.
On November 4, 2002, this Court denied the petition and ordered Tasse to show cause why he should not be sanctioned for his abusive language. On November 13, 2002, Tasse responded to the Court's order. Rather than providing some reason why this Court should not issue its proposed sanction, Tasse flaunts his disregard for this Court:
The $upine [sic] court tells FLA JUDICIAL QUALIFICATIONS IT IS OK THAT THEIR NAZI JUDGES CAN DENY A JURY TRIAL. The FLA $UPINE [sic] COURT WOULD NOT SEE THAT JU$TICE [sic] IS DOEN [sic] IN MY CASE BECAUSE THEY KNOW THE SCANDAL WOULD BE ENORMOUS. $UPINE [sic] COURT IS WORTHLESS and only gives the PRETENSE OF JUSTICE, the same as CUBA, PERU, CHINA, IRAN and IRAQ.
The $UPINE [sic] COURT in their Order said I used profanity which they quoted but they would not spell the words A**, SH*T, because their mama told them not to use those bad words. The $UPINE [sic] COURT is very juvenile.... Being a former low budget movie producer, I will soon tell the world.
This Court cannot allow its judicial processes to be misused by Tasse to malign and insult those persons and institutions which have been unfortunate enough to come in contact with Tasse. Tasse has litigated the matters he raised in his petition repeatedly,[2] and this is not the first time Tasse has filed scandalous pleadings in this Court. This Court has the authority and the duty to prevent the misuse and abuse of the judicial system. It is clear that Tasse is unable to maintain the bare minimum standard of decorum and respect for the judicial system that all litigants must have when filing court pleadings and seeking court rulings. Since Tasse cannot meet that standard and cannot conduct himself with that basic level of decency, we *796 are forced to forbid Tasse from filing any further pro se pleadings in this Court.
This Court has previously refused to allow litigants to repeatedly abuse the judicial system. This Court has sanctioned a dozen or so abusive litigants.[3] This Court has not previously imposed sanctions upon a litigant for abuse which included profanity; it has sanctioned a litigant for malicious litigation. See Martin v. State, 747 So.2d 386 (Fla.2000) (Martin I). In Martin I, the litigant insulted and maligned the reputation of numerous judges and other court personnel. In addition, he engaged in ethnic and religious disparagement. Eventually, this Court prohibited Martin from filing any further pro se litigation. See Martin v. State, 833 So.2d 756 (Fla.2002) (Martin II). Before imposing such a sanction in Martin II, however, we allowed Martin the opportunity to argue why he should not be sanctioned. Like Tasse, Martin responded with additional abuse. We find a passage from that decision relevant today:
This Court ordered Martin to show cause why he should not be sanctioned for abusing the judicial system by filing pleadings that failed to properly invoke the jurisdiction of this Court. Martin has not done so. Instead, he has responded with insults, threats of federal litigation, and continued reargument of issues which have already been determined adversely to him....
While we are cognizant of the access to courts implications of refusing to accept any more petitions from [the petitioner] unless they are signed by an attorney, we are also concerned that failure to impose this sanction will handicap this Court's ability to timely review the many other petitions filed by inmates and other petitioners who have not abused the system. While on the one hand, we would like to say that the courts should never limit a person's ability to access the courts, on the other hand, there are a handful of petitioners who have so abused the system that failure to restrain them could deny or delay the right of access to courts for the rest of the populace. Even the United States Supreme Court has had to face the difficult perspective of putting significant restraints on some of its pro se litigants. Several of the members of the United States Supreme Court did not agree that limits should ever be placed on a litigant; however, a majority of that Court has found [in In re McDonald, 489 U.S. 180, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989),] that in extreme circumstances, it was necessary to do so to ensure free access to the courts in general.
Martin, 833 So.2d at 760 (alterations in original) (quoting Jackson v. Fla. Dep't of Corrections, 790 So.2d 398, 401 (Fla.2001)).
Other jurisdictions have also imposed sanctions on litigants who abused the legal *797 system by using profanity. In Washington v. Alaimo, 934 F.Supp. 1395 (S.D.Ga. 1996), for example, a federal district court sanctioned an inmate for, among other things, his "Motion to Kiss My A**" in which he moved "all Americans at large and one corrupt Judge Smith [to] kiss my got [sic] dam* a** sorry mother f***** you." Id. at 1396. The Court stated that Washington had "wasted the time of many an innocent party and [had] flippantly used the resources of the judiciary with his abusive motions filing practice." Id. at 1397. Thus, the court concluded that Washington's
recreational litigation has gone on for entirely too long and at great expense to the American taxpayer. Too many resources have been wasted and too many innocent people harassed. This Court now considers what discretion it has to prevent the future waste of judicial resources.
Id. at 1399. The court then required Washington pay all filing fees for any further actions and post a $1300 contempt bond for each case filed. The bond would be forfeited were Washington to engage in any further contemptuous behavior.
In Werner v. Utah, 32 F.3d 1446 (10th Cir.1994), the inmate petitioner there had also engaged in much litigation. However, when court orders or other correspondence were sent to him regarding his litigation, he refused to accept the correspondence and wrote obscenities and threats on the envelopes, which were then returned to the court. The court there severely restricted Werner's filing abilities.
Accordingly, in order to preserve the dignity of the judicial system we hereby instruct the Clerk of this Court to accept no pleading for filing from Tasse unless that pleading is submitted and signed by an attorney who represents Tasse and who is a member in good standing of The Florida Bar.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO and BELL, JJ., concur.
NOTES
[1] We have jurisdiction to issue writs of mandamus pursuant to article V, section 3(b)(8) of the Florida Constitution.
[2] See Tasse v. Norman, 819 So.2d 140 (Fla.2002)(table) (No. SC01-1615) (mandamus denied); Tasse v. Nielson, 786 So.2d 1189 (Fla.2001) (table) (No. SC01-207) (petition for discretionary review of Fourth District Court of Appeal's decision denied based on lack of jurisdiction); Tasse v. Norman, 760 So.2d 948 (Fla.2000) (table) (No. SC00-200) (petition for discretionary review of Fourth District Court of Appeal's decision dismissed for lack of jurisdiction); Tasse v. Denowitz, 660 So.2d 715 (Fla.1995) (table) (No. 86,113) (petition for discretionary review of Fourth District Court of Appeal's decision dismissed for lack of jurisdiction); Tasse v. Norman, 782 So.2d 401 (Fla. 5th DCA 2001) (table) (No. 5D00-3476) (summary affirmance); Tasse v. New River Boat Club, Inc., 745 So.2d 362 (Fla. 4th DCA 1999) (No. 99-2237) (summary affirmance); Tasse v. Denowitz, 654 So.2d 933 (Fla. 4th DCA 1995) (table) (No. 94-0880) (per curiam affirmance).
[3] See Lussy v. Fourth District Court of Appeal, 828 So.2d 1026 (Fla.2002); Armstead v. State, 817 So.2d 841 (Fla.2002); Peterson v. State, 817 So.2d 838 (Fla.2002); Jackson v. Florida Dep't of Corrections, 790 So.2d 398 (Fla. 2001); Green v. Moore, 786 So.2d 579 (Fla. 2000) (table) (No. SC00-137); Martin v. State, 747 So.2d 386 (Fla.2000); Ranson v. State, 727 So.2d 909 (Fla.1999) (table) (No. 94,306); Ranson v. Mills, 727 So.2d 909 (Fla.1999) (table) (No. 94,305); Rivera v. State, 773 So.2d 56 (Fla.1998) (table) (No. 93,074); Rivera v. State, 728 So.2d 1165 (Fla.1998) (table) (No. 92,601); Mathis v. Singletary, 760 So.2d 947 (Fla.1998) (table) (No. 92,098); Vickson v. The Florida Bar, 717 So.2d 541 (Fla.1998) (table) (No. 92,256); Foster v. State, 717 So.2d 531 (Fla.1998) (table) (No. 92,424); Aysisayh v. State, 701 So.2d 867 (Fla.1997) (table) (No. 89,927); Attwood v. Singletary, 661 So.2d 1216 (Fla.1995).