979 So.2d 917 (2008)
THE FLORIDA BAR, Complainant,
v.
John Bruce THOMPSON, Respondent.
The Florida Bar, Complainant,
v.
John Bruce Thompson, Respondent.
Nos. SC07-80, SC07-354.
Supreme Court of Florida.
March 20, 2008.
Rehearing Denied April 3, 2008.
*918 John F. Harkness, Jr., Executive Director, and Kenneth Lawrence Marvin, Staff Counsel, The Florida Bar, Tallahassee, FL, and Sheila Marie Tuma, Bar Counsel, The Florida Bar, Orlando, FL, for Complainant.
John Bruce Thompson, pro se, Coral Gables, FL, for Respondent.
PER CURIAM.
John Bruce Thompson currently has two Florida Bar disciplinary proceedings pending against him, Florida Bar v. Thompson, Case No. SC07-80, and Florida Bar v. Thompson, Case No. SC07-354. The Court is awaiting the referee's report. By order dated April 12, 2007, after submitting inappropriate and pornographic materials to this Court, Thompson was specifically warned that should he continue to submit inappropriate filings, this Court would consider imposing a sanction limiting Thompson's ability to submit further filings without the signature of an attorney other than himself. Since that order, Thompson has filed numerous additional filings which led this Court to issue an order directing Thompson to show cause why we should not limit his filings or otherwise impose sanctions upon him for submitting frivolous filings. We now sanction Thompson.[1]
Thompson has submitted over fifty filings directly with this Court, all of which have either been forwarded to the referee, dismissed, or denied. Additionally, Thompson's most recent filings are repetitive, frivolous, and, like his earlier ones, insulting to the Court. One of Thompson's recent filings contains what Thompson refers to as a "children's picture book for adults" that rehashes his previous arguments in illustrated form which he states was necessary due to "the Court's inability to comprehend" his arguments. Between the text of the motion, Thompson pasted images depicting swastikas, kangaroos in court, a reproduced dollar bill, cartoon squirrels, Paul Simon, Paul Newman, Ray Charles, a handprint with the word "SLAP!" written under it, Bar Governor Benedict P. Kuehne, a baby, Ed Bradley, Jack Nicholson, Justice Clarence Thomas, Julius Caesar, monkeys, and a house of cards, and the motion concludes with a photograph of the cover of Thompson's book, Out of Harm's Way.
During the Bar's investigatory process, in Thompson v. Florida Bar, 939 So.2d 1061 (Fla.2006)(Case No. SC06-1113), Thompson filed a petition for writ of mandamus, one motion, thirteen notices of filing, six supplements to the petition (two of which were filed after the Court's disposition order), and a "response" to the Court's disposition order. Further, Thompson engaged, to the point of abuse, as he has done in the instant proceedings, in a relentless and frivolous pursuit for vindication of his claim that he is being victimized by The Florida Bar. Case No. SC06-1113 was dismissed for lack of jurisdiction in part and denied in part.
Rather than filing a single response to this Court's show cause order or seeking leave to file supplemental responses, Thompson has filed, almost daily, multiple responses, petitions, and motions. In one of these filings, he references the "children's picture book for adults" and reiterates that he "sent a pleading chocked full of pictures to illustrate his verbal points, since the Court seemed unable to *919 grasp the words." Thompson argues that no rule of procedure prohibits visual depictions in pleadings. Indeed, in this string of responses, he includes a visual depiction of John Hancock "who is reputed to have signed his name on the [Declaration of Independence] so that King George could read it without his spectacles." Thompson misses the point. In addition to insulting the Court's dignity, the picture-laden motion was admittedly repetitive of claims that had previously been raised, and Thompson had already been advised that he should wait to raise these claims on review of the referee's report.
Thompson's multiple responses are rambling, argumentative, and contemptuous. He states that he "deeply appreciates" the show cause order and then argues that the Court is retaliating against him for embarrassing it and "pointing out some inconvenient truths" regarding itself and The Florida Bar. Further, he contends that the Bar will likely investigate any lawyer Thompson selects to represent him. Also, Thompson argues that he has only been trying to get the disciplinary proceedings "back on track" and the Court is attempting to "yank" his license before the referee's report is filed. Thompson asserts that he has rightfully sought relief by way of petitions for writs of mandamus and prohibition and questions whether the Court even knows that these writs exist. In another "response," Thompson attaches a letter he sent to the Senate Judiciary Committee requesting it to scrutinize this Court's budget for allegedly failing to oversee the Bar. Thompson additionally claims, without elaboration, that he "is not frivolous and this [C]ourt knows it," the Court is ignoring him, and no court can deny a citizen access to courts. In the conclusion to his latest response, Thompson states, "This Court has been foolish indeed. It's [sic] bizarre, idiotic show cause order indicates that it is not done being foolish. Fine. Enter the order you want. Make my day."
Taken cumulatively, Thompson's filings fail to show good cause why sanctions should not be imposed. Indeed, as noted above, he challenges the Court to impose sanctions. While Thompson generally complains that the Court is retaliating against him for uncovering certain alleged truths regarding itself and the Bar, we have not turned a blind eye to his claims. We have simply attempted to follow well-settled procedures designed to allow a fair and orderly determination of the proceedings. In his pleadings, Thompson makes vague assertions based on questionable facts and authority; often, this Court is an inappropriate forum to raise such claims in the first instance. Thompson demonstrates his ignorance as to the rules of procedure, forum selection, and timing by making the following statement: "This Court could not be bothered to look at these issues before the referee issues her report." (Emphasis in original.)[2] In sanctioning Thompson, we are requiring him to retain qualified counsel so that his arguments might be properly presented through the appropriate procedures in the appropriate forum. We do not limit such counsel's ability to challenge the referee's findings and recommendations on review. What we cannot tolerate, however, is Thompson's continued inability to maintain a minimum standard of decorum and respect for the judicial system to which all *920 litigants, and especially attorneys, must adhere.
Although Thompson argues that no court can deny a citizen access to courts, both this Court and the United States Supreme Court have, when deemed necessary, exercised the inherent judicial authority to sanction an abusive litigant. See, e.g., Martin v. District of Columbia Court of Appeals, 506 U.S. 1, 113 S.Ct. 397, 121 L.Ed.2d 305 (1992); In re Sindram, 498 U.S. 177, 111 S.Ct. 596, 112 L.Ed.2d 599 (1991); In re McDonald, 489 U.S. 180, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989); Hamilton v. State, 945 So.2d 1121 (Fla.2006); May v. Barthet, 934 So.2d 1184 (Fla.2006); Sibley v. Florida Judicial Qualifications Comm'n, 973 So.2d 425 (Fla.2006); Armstead v. State, 817 So.2d 841 (Fla.2002); Peterson v. State, 817 So.2d 838 (Fla.2002); Jackson v. Fla. Dep't of Corr., 790 So.2d 398 (Fla.2001); Rivera v. State, 728 So.2d 1165 (Fla.1998); Attwood v. Singletary, 661 So.2d 1216 (Fla. 1995). One justification for such a sanction lies in the protection of the rights of others to timely review of their legitimate filings. See Martin, 506 U.S. at 3, 113 S.Ct. 397 (imposing sanction where petitioner's filings for certiorari review had a deleterious effect on the Court's fair allocation of judicial resources); Sibley, 973 So.2d at 426. As noted by the United States Supreme Court, "[e]very paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." In re McDonald, 489 U.S. at 184, 109 S.Ct. 993.
In Tasse v. Simpson, 842 So.2d 793 (Fla. 2003), we denied a petition for writ of mandamus that contained scandalous and obscene language and ordered the petitioner, Tasse, to show cause why he should not be sanctioned for his abusive language. Id. at 795. Among other things, Tasse referred to a trial judge as a "nazi," a "motherf* * *er," and an "imbecile." Id. In response, Tasse only further flaunted his disregard for the Court. Id. at 796. Finding that it was not the first time the petitioner had filed scandalous pleadings, we directed our Clerk of Court to accept no pleading for filing from Tasse unless that pleading was submitted and signed by a member of The Florida Bar in good standing representing Tasse. Id. at 797. In doing so, we stated:
This Court cannot allow its judicial processes to be misused by Tasse to malign and insult those persons and institutions which have been unfortunate enough to come in contact with Tasse. Tasse has litigated the matters he raised in his petition repeatedly, and this is not the first time Tasse has filed scandalous pleadings in this Court. This Court has the authority and the duty to prevent the misuse and abuse of the judicial system. It is clear that Tasse is unable to maintain the bare minimum standard of decorum and respect for the judicial system that all litigants must have when filing court pleadings and seeking court rulings. Since Tasse cannot meet that standard and cannot conduct himself with that basic level of decency, we are forced to forbid Tasse from filing any further pro se pleadings in this Court.
Id. at 795-96 (footnote omitted).
As in Tasse, a thorough review of Thompson's filings lead to one conclusion. He has abused the processes of the Court and, by doing so, has hindered the ability of this Court to properly resolve those matters which are properly before the Court.
We conclude that sanctions are merited on this record. Accordingly, in order to *921 preserve the right of access for all litigants and promote the interests of justice, the Clerk of this Court is hereby instructed to reject for filing any future pleadings, petitions, motions, documents, or other filings submitted by John Bruce Thompson, unless signed by a member in good standing of The Florida Bar other than himself. Under the sanction herein imposed, Thompson is not being denied access to the courts; that access is simply being limited due to his abusiveness. Thompson may petition the Court, but may do so only through the assistance of counsel, whenever such counsel determines that the filing has merit and can be filed in good faith. However, Thompson's frivolous and abusive filings must immediately come to an end. Further, if Thompson submits a filing in violation of this order, he may be subjected to contempt proceedings or other appropriate sanctions. All other pending petitions, motions, and requests for relief filed by Thompson are hereby denied without prejudice.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] We have jurisdiction. See art. V, § 15, Fla. Const.
[2] In our previous orders to Thompson, we indicated that he had an adequate legal remedy by way of a petition for review of the referee's findings and recommendations. Further, although we ultimately denied relief, we also considered Thompson's challenges to the referee's unwillingness to recuse herself.