PER CURIAM.
 

 Anthony Eladio Ramos was disbarred for twenty years, effective December 18, 1997.
 
 See Fla. Bar v. Ramos,
 
 717 So.2d 540 (Fla.1998) (case nos. 91,562 & 91,564) (table);
 
 Fla. Bar v. Ramos,
 
 703 So.2d 478 (Fla.1997) (table). Even though the disbarment is imposed until 2017, Anthony Eladio Ramos petitioned this Court in 2007 for permission to seek readmission to The Florida Bar.
 
 [1]
 
 On July 14, 2008, the Court dismissed Ramos’s petition. Further, on September 18, 2008, the Court denied Ramos’s motion for rehearing. Since that order, Ramos has submitted numerous additional filings. Thus, the Court issued an order directing Ramos to show cause why we should not limit his filings or otherwise impose sanctions upon him for submitting frivolous filings. We now sanction Ramos.
 

 Ramos’s Filings and the Order to Show Cause
 

 Despite the resolution of the present case, Ramos persists in filing numerous documents that ignore the dismissal of the petition. Also, in those filings he inappropriately continues to challenge his long-finalized disciplinary cases. Thus, on October 7, 2008, the Clerk of the Court sent Ramos a letter stating that the instant case “is final in this Court and no further pleadings may be filed.”
 
 [2]
 
 Nevertheless, since the Court dismissed his petition, Ramos has filed twenty-four documents.
 
 [3]
 
 The filings have not resulted in relief for Ramos. Thus, in order to limit Ramos’s ability to monopolize this Court’s time, the Court issued the order to show cause directing Ramos to demonstrate why:
 

 this Court should not impose upon you a sanction for abusing the legal system, including, but not limited to directing the Clerk of this Court to reject for filing any future pleadings, petitions, motions, letters, documents, or other filings submitted to this Court by you unless signed by a member of The Florida Bar other than yourself, which in any way challenge the disbarment entered by this Court in the above cases or challenge the disposition of the instant Florida Board of Bar Examiners case.
 

 Fla. Bar v. Ramos,
 
 No. SC07-2388 (Fla. Mar. 2, 2009). In his response to the
 
 *270
 
 order to show cause, Ramos continues to present arguments regarding the petition for readmission case and his finalized disciplinary cases. For example, he asserts that the referee in one of his disciplinary cases held a “secret hearing” with Bar counsel and his counsel, during which the referee permitted Ramos’s counsel to withdraw from representation. Ramos claims his case proceeded before the referee for months, but no one informed him that his counsel had withdrawn.
 

 In addition, Ramos fails to comprehend that the Court has disposed of his cases. In fact, Ramos asserts that the Court has not yet dealt with the substantive issues in these cases and, from that point, he complains that the instant case has been pending with the Court for an excessive period of time. Ramos is apparently oblivious to the fact that the Court issued an order dismissing his petition for review on July 14, 2008.
 

 Next, in response to the order recognizing that Ramos has submitted numerous frivolous filings, Ramos makes the inapt assertion that he is an industrious professional who is “not inclined to frivolity.”
 

 Further, in his response, Ramos argues that he should be permitted to seek readmission now, even though the disbarment continues until 2017. Ramos fails to acknowledge the extent of his misdeeds and the professional misconduct that caused his disbarment.
 
 [4]
 
 In fact, Ramos’s disciplinary cases resulted in more than one recommendation of disbarment.
 
 [5]
 
 Ramos cannot evade his sanction by continuing to file numerous documents in this Court.
 

 A thorough review of Ramos’s response to the order to show cause leads to one conclusion. Ramos has failed to show good cause why sanctions should not be imposed. Indeed, his response suggests that he will continue his practice of repeatedly filing meritless documents because he is incapable of recognizing that his cases are resolved. Ramos has abused the processes of the Court and, by doing so, has hindered the ability of this Court to properly resolve those matters that are properly before it. We conclude that a sanction is merited on this record.
 

 Authority to Sanction
 

 Both this Court and the United States Supreme Court have, when deemed necessary, exercised the inherent judicial authority to sanction an abusive litigant.
 
 See, e.g., Martin v. District of Columbia
 
 
 *271
 

 Court of Appeals,
 
 506 U.S. 1, 113 S.Ct. 397, 121 L.Ed.2d 305 (1992);
 
 In re Sindram,
 
 498 U.S. 177, 111 S.Ct. 596, 112 L.Ed.2d 599 (1991);
 
 In re McDonald,
 
 489 U.S. 180, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989);
 
 Fla. Bar v. Thompson,
 
 979 So.2d 917 (Fla.2008);
 
 Hamilton v. State,
 
 945 So.2d 1121 (Fla.2006);
 
 May v. Barthet,
 
 934 So.2d 1184 (Fla.2006);
 
 Sibley v. Florida Judicial Qualifications Comm’n,
 
 973 So.2d 425 (Fla.2006);
 
 Armstead v. State,
 
 817 So.2d 841 (Fla.2002);
 
 Peterson v. State,
 
 817 So.2d 838 (Fla.2002);
 
 Jackson v. Fla. Dep’t of Corr.,
 
 790 So.2d 398 (Fla.2001);
 
 Rivera v. State,
 
 728 So.2d 1165 (Fla.1998);
 
 Attwood v. Singletary,
 
 661 So.2d 1216 (Fla.1995). One justification for such a sanction lies in the protection of the rights of others to timely review of their legitimate filings.
 
 See Martin,
 
 506 U.S. at 3, 113 S.Ct. 397 (imposing sanction where petitioner’s filings for certiorari review had a deleterious effect on the Court’s fair allocation of judicial resources);
 
 Sibley,
 
 973 So.2d at 426. As noted by the United States Supreme Court, “[ejvery paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution’s limited resources. A part of the Court’s responsibility is to see that these resources are allocated in a way that promotes the interests of justice.”
 
 In re McDonald,
 
 489 U.S. at 184, 109 S.Ct. 993. In
 
 Sibley,
 
 after finding that an attorney had filed numerous meritless pro se filings related to his dissolution of marriage proceedings, the Court refused to accept any further filings from the attorney regarding his domestic disputes with his former wife unless signed by a member of The Florida Bar other than himself. In
 
 Jackson v. Fla. Dep’t of Corr.,
 
 790 So.2d 398 (Fla.2001), the Court noted that such action did not violate the constitutional right of access to the courts:
 

 While on the one hand, we would like to say that the courts should never limit a person’s ability to access the courts, on the other hand, there are a handful of petitioners who have so abused the system that failure to restrain them could deny or delay the right of access to courts for the rest of the populace.
 

 Id.
 
 at 401.
 

 Conclusion
 

 Accordingly, in order to preserve the right of access for all litigants and promote the interests of justice, the Clerk of this Court is hereby instructed to reject for filing any future pleadings, petitions, motions, notices, or other filings submitted by Anthony Eladio Ramos that are related to his judgments of disbarment or his potential readmission to The Florida Bar, unless the filings are signed by a member in good standing of The Florida Bar. Under the sanction herein imposed, Ramos is not being denied access to the courts; that access is simply being limited due to his abusiveness. Ramos remains eligible to seek readmission to The Florida Bar, once he has completed the twenty-year period of disbarment,
 
 [6]
 
 with the requirement that the filings be signed by a member in good standing of The Florida Bar. However, we cannot tolerate Ramos’s continued inability
 
 *272
 
 to abide by the legal processes of the judicial system. If Ramos submits a filing in violation of this order, he may be subjected to contempt proceedings or other appropriate sanctions, including permanent disbarment.
 
 See
 
 R. Regulating Fla. Bar 3-5.1(f) (“Permanent disbarment shall preclude readmission.”)
 

 All other pending petitions, motions, and requests for relief filed in this cause are hereby denied.
 

 It is so ordered.
 

 QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, and PERRY, JJ., concur.
 

 [1]
 

 . We have jurisdiction.
 
 See
 
 art. V, § 15, Fla. Const.
 

 [2]
 

 . Similarly, Ramos's numerous merilless filings in his disciplinary cases resulted in this Court advising him that the cases are final and "any further filings will not be responded to and placed in a miscellaneous file.”
 
 Fla. Bar v. Ramos,
 
 No. 89,797 (Fla. Aug. 16, 2005) (Ramos filed more than thirty documents subsequent to the order of disbarment);
 
 see also Fla. Bar v. Ramos,
 
 Nos. 91,562 & 91,564 (Fla. Aug. 16, 2005).
 

 [3]
 

 .The filings include a brief, a petition for writ of mandamus, an appendix, several "notices,” a memo to the Clerk of the Court, various supplemental authorities, several motions, notices of information regarding allegations of prosecutorial misconduct in the case of United States Senator Ted Stevens, "instructions” to the Clerk of the Court, a "Request for Investigation by the Inspector General Concerning the Actions of the Clerk of the Court,” and a request to "Florida Legislative Committees to Expend Investigation Concerning the Office of the Clerk of the Florida Supreme Court.”
 

 [4]
 

 . For example, in No. 89,797, the Bar filed a nineteen-count complaint against Ramos alleging over 160 rule violations, including: massive trust account deficits from 1990-1996 demonstrating that he took over $200,000 from fourteen clients; trust account checks returned for insufficient funds; failure to inform clients of settlements and to disburse settlement proceeds; premature withdrawal of trust account funds; excessive fees; forgery of client signatures; and failure to pay medical providers.
 

 Further, in No. 91,562, the Bar filed a complaint alleging trust account shortages of approximately $23,000 as to insurance recoveries for two clients. The referee found the facts as alleged by the Bar. The referee also found that Ramos had utilized the clients’ insurance settlement proceeds (the money at issue) without the clients' permission and for reasons that had no nexus with the cases. Ramos was found guilty of violating fourteen provisions of the Rules Regulating the Florida Bar.
 

 [5]
 

 .
 
 See Fla. Bar v. Ramos,
 
 717 So.2d 540 (Fla.1998) (table citation of unpublished order for consolidated case nos. 91,562 & 91,564) (disbarred);
 
 Fla. Bar v. Ramos,
 
 703 So.2d 478 (Fla.1997) (table citation of unpublished case no. 89,797) (disbarred);
 
 Fla. Bar v. Ramos,
 
 699 So.2d 1376 (Fla.1997) (table citation of unpublished case) (suspended);
 
 Fla. Bar v. Ramos,
 
 662 So.2d 933 (Fla.1995) (table citation of unpublished case) (probation);
 
 Fla. Bar v. Ramos,
 
 577 So.2d 1330 (Fla.1991) (table citation of two consolidated, unpublished cases) (public reprimand).
 

 [6]
 

 . Ramos has repeatedly argued that a twenty-year disbarment is an unusual sanction. We acknowledge that such a sanction is not typical. However, we also recognize that Ramos’s ongoing and pervasive misdeeds placed him in a category beyond the typical misappropriation case. He was the subject of numerous disciplinary cases. Also, his misdeeds were extremely egregious. Further, if Ramos had been permanently disbarred, he would never be permitted to seek readmission to The Florida Bar.
 
 See Fla. Bar v. Thompson,
 
 994 So.2d 306 (Fla.2008) (imposing a permanent disbarment "without leave to apply for readmission”).